489 A.2d 1360

Honorable Peter J. CAMIEL, as Vice Chairman of the Pennsylvania Turnpike Commission, and Honorable James J. Dodaro, as a member of the Pennsylvania Turnpike Commission and the Pennsylvania Turnpike Commission, Petitioners,

v.

Honorable Richard J. THORNBURGH, Governor of the Commonwealth of Pennsylvania, Respondent,

and

Honorable Thomas D. Larsen, as Secretary of Transportation and ex officio member of the Pennsylvania Turnpike Commission and Honorable Frank A. Ursomarso, as a member of the Pennsylvania Turnpike Commission, Respondents/Intervenors.

Supreme Court of Pennsylvania.

Argued Jan. 24, 1985.

Decided April 4, 1985.

Louis R. Martin, Kevin F. Longenbach, Harrisburg, for petitioner Pa. Turnpike Com'n.

John P. Krill, Jr., Deputy Gen. Counsel, Harrisburg, for respondents.

Carleton O. Strouss, Harrisburg, Spencer A. Manthorpe, Philadelphia, for intervenors Dept. of Trans.

Before NIX, C.J., and LARSEN, FLAHERTY, McDER-MOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

In 1978 the legislature authorized the Turnpike Commission to undertake a number of construction projects, including the widening to six lanes of the Pennsylvania turnpike in the Philadelphia area, which work would be financed by the issuance "of bonds, notes or other obligations of the commission in an amount equal to the costs of the projects...." Act of Sept. 8, 1959, P.L. 828, § 3, added 1978, Nov. 26, P.L. 1411, No. 331 § 1, imd. effective, 36 P.S.

§ 652u.1. Anticipating the need to issue revenue bonds to finance the turnpike widening, the Turnpike Commission at its May 31, 1983 meeting resolved to begin costly design, engineering and traffic flow work which was necessary before revenue bonds could be issued, and which would be paid for from its reserve maintenance fund. The reserve maintenance fund, in turn, would be repaid from the proceeds of future sales of revenue bonds.

On October 2, 1984, the commission requested the governor to provide his facsimile signature for use on revenue bonds, which it was planning to issue. The turnpike enabling act requires a facsimile of the governor's signature to appear on such bonds:

> All revenue bonds, notes or other obligations hereafter issued by the commission shall bear the facsimile signatures of the Governor and the chairman of the commission and the facsimile of the official seal of the commission shall be affixed thereto and attested by the secretary and the treasurer of the commission, and any coupons attached thereto shall bear the facsimile signature of the chairman of the commission.

Act of August 14, 1951, P.L. 1232, § 4, 36 P.S. § 659.4. At the time of requesting the governor's signature, the commission had not itself approved the issuance of revenue bonds, apparently because its financial position would not, at that time, have supported such approval, but it had undertaken some of the necessary preparatory work for such an issuance, as mentioned above.

On November 16, 1984, the governor, acting through his Secretary of Administration, indicated that he would not supply his facsimile signature, questioning both the timing and the manner of the proposed bond issue. The Turnpike Commission then commenced this action in mandamus to compel the governor to furnish his signature.[1] At issue in

1. On November 16, 1984 two commissioners of the Pennsylvania Turnpike Commission filed with this Court a Petition for Review in the Nature of Mandamus against Governor Richard Thornburgh. On November 20, 1984, the governor answered the petition and the two

this case is whether the governor of the Commonwealth of Pennsylvania may be compelled, by an action in mandamus, to furnish his facsimile signature to the Pennsylvania Turnpike Commission for use on revenue bonds.

The governor asserts, inter alia, that his facsimile signature may not be compelled by an action in mandamus because the act of providing his facsimile signature is discretionary, not mandatory, and that even if it is determined that the furnishing of his facsimile signature is a non-discretionary, ministerial task which may be compelled by mandamus, the matter is not ripe for adjudication because the commission has not yet approved a bond issue. The commission, on the other hand, asserts that the governor has no discretionary authority to approve of a turnpike bond issue, that he is required by the statute to perform the purely ministerial task of furnishing his facsimile signature for use on revenue bonds, and that the bond issue was approved by the commission on May 31, 1983.

More precisely, the commission's argument is that since it undertook to begin costly engineering and traffic flow work in preparation for the widening project, resolving at the May 31, 1983 commission meeting that the cost of this work would be paid for from the proceeds of future bond sales, and recognizing that "the use of bond financing in the near term for an extended toll road system would appear to be necessary now," it should be treated as having approved of a bond issuance even though it did not actually approve such an issue. We disagree.

There is no statutory or contractual requirement that the governor act in the matter of a Turnpike Commission bond issue before the Turnpike Commission itself has approved of such an issue. Assuming, *arguendo*, that the governor would be required to furnish his signature once the commis-

remaining commissioners petitioned to intervene. On November 26, 1984, this Court, with three justices dissenting, granted both plenary jurisdiction and the petition to intervene.

sion had approved a bond issue there was no commission approval in this case. The case is not, therefore, ripe for adjudication.

 It is axiomatic that this Court will not address any claims which do not involve actual, *present* conflicts. If, an action in mandamus is to lie, it must involve the assertion of a *present* right which has been refused by the agency or government officer whose clear duty it is to perform.[2] In the context of mandamus, the right may not accrue in the future and the refusal may not be speculative. Where the commission has not approved a bond issue, the right to secure the governor's facsimile signature has not yet arisen, nor has anything but a preliminary refusal been given. It may be that after a bond issue has been approved, the governor will furnish his facsimile signature, making this entire controversy moot.

 Thus, without deciding the merits of the question of whether the governor is required to provide the commission with a facsimile of his signature for a bond issue, we hold that the case is not ripe for decision at this time because a bond issue has not yet been approved.

The petition is denied.

McDERMOTT, J., dissents and would reach the merits.

2. In *Coleman v. Board of Education of School District of Philadelphia*, 477 Pa. 414, 417–18, 383 A.2d 1275, 1277 (1978), this Court summarized the parameters of an action in mandamus:

[M]andamus is an extraordinary writ which lies to compel the performance of a ministerial act or a mandatory duty where there is a clear legal right in the plaintiff, a corresponding duty in the defendant, and a want of any other appropriate and adequate remedy.... Mandamus does not lie to compel the performance of discretionary acts except where the exercise or non-exercise of discretion is arbitrary, fraudulent, or based upon a mistaken view of the law. [Citations omitted].