Mary Jane ARNOLD, Individually and on behalf of others similarly situated, and Bonnie Y. Avery, Kathy L. Jennings, Dawn Bell, Patricia L. Bennett, Laura Gilson, Kathryn B. Thomas, Patricia M. Ault, Joyce S. Ritter, and Alta E. Loveland, Individually and on behalf of all others similarly situated

v.

BLaST INTERMEDIATE UNIT 17 and Dr. Robert M. Mitstifer.

Appeal of Mary Jane ARNOLD, Individually and on behalf of all others similarly situated.

No. 87–5330.

United States Court of Appeals, Third Circuit.

Argued Dec. 2, 1987.

Decided March 25, 1988.

Clifford A. Rieders (argued), Robert Vesely, Rieders, Travis, Mussina, Humphrey & Harris, Williamsport, Pa., for appellant.

Lawrence B. Fine, Michael L. Banks (argued), Philadelphia, Pa., David R. Bahl, McCormick, Reeder, Nichols, Sarno, Bahl & Knecht, Williamsport, Pa., for appellee, BLaST Intermediate Unit 17.

Before WEIS, HIGGINBOTHAM and ROSENN, Circuit Judges.

## OPINION OF THE COURT

ROSENN, Circuit Judge.

This appeal raises an important question pertaining to the enforcement of a federal judgment obtained under a federal employment discrimination statute against an unincorporated public entity established by a state legislature. The Pennsylvania legislature conceived and created BLaST Intermediate Unit 17 (BLaST) and charged it with providing educational services to mentally and physically handicapped children within a central four-county region of the state. The plaintiffs, teacher aides employed by BLaST, obtained an award against it in the United States District Court for the Middle District of Pennsylvania in the sum of $161,025 under the Federal Equal Pay Act because they were paid less than males in comparable positions. This court upheld the jury verdict under the Equal Pay Act in August of 1986. *Arnold et al. v. BLaST Intermediate Unit 17*, 800 F.2d 1130 (3d Cir.1986) (per curiam).

Armed with their valid federal judgment, the plaintiffs returned to the district court for enforcement proceedings. They first sought a writ of mandamus execution against BLaST to compel payment of the judgment out of funds contained in a BLaST bank account of $210,509.96 that had been garnished in the course of prior proceedings.[1] After BLaST moved to quash the petition for mandamus execution, but before its motion had been decided, the plaintiffs sought and obtained a writ of execution from the district court clerk on the funds in the garnished bank account. They then withdrew their petition for mandamus execution, believing that it had become moot.

The district court, however, stayed the writ of execution pending briefing and then denied the plaintiffs' attempt to reinstate their petition for mandamus execution on the ground that the use of this writ was inappropriate against an entity that was not a school district. Pa.Stat.Ann. tit. 24, § 6-611 (Purdon 1962). The court then vacated the clerk's execution order because BLaST was either "an alter ego of the Commonwealth or at the very least a public authority," neither of which was subject to execution by garnishment under the Pennsylvania Rules of Civil Procedure. Pa.R. Civ.P. 3101(a).

Finally, having failed in their attempts to satisfy their judgment through statutorily established mandamus execution or garnishment proceedings, the plaintiffs filed a simple petition for a writ of mandamus against BLaST. The district court denied the writ, holding that the Board had no "specific plain ministerial duty" to pay the judgment. Plaintiffs appeal and we reverse.[2]

1. After the attachment of funds pursuant to a writ of execution, counsel for the parties agreed that the sum attached should be reduced to $210,503.96 and remain attached pending the pursuit of the appeal and cross-appeals. These funds are still attached and available to satisfy plaintiffs' judgment.

2. In the alternative, BLaST had sought a court order directing payment by the Pennsylvania Department of Education or the Commonwealth Treasurer. The district court's dismissal of the petition with respect to these entities has not been appealed.

## I.

The legislation establishing state intermediate units invested them with all the powers and duties of the former county boards of school directors with respect to special pupil services and vocational-technical education. 24 Pa.Stat.Ann. §§ 9–958, 959 (Purdon 1987 Supp.). It is unclear how the units fit within the framework of state and local government. They are neither "political subdivisions," *see* 1 Pa.Cons.Stat. Ann. § 1991 (Purdon 1987 Supp.) (like counties, cities, or school districts), nor "public authorities," *see* Pa.Stat.Ann. tit. 53, § 302 (Purdon 1974) (bodies politic and corporate). Intermediate units, unlike school districts, are not separately incorporated entities with a general statutory right to sue and be sued. *Cf.* 24 Pa.Stat.Ann. tit. 24, §§ 2–211, 2–213 (Purdon 1962), *but see* 42 Pa. Cons.Stat.Ann. § 8501 (Purdon 1982) (intermediate units are subject to suit under tort claims act).

The units have some attributes of state agencies. The organizing statute proclaims that they "shall be a part of the public school system of this Commonwealth" and each school district of the Commonwealth is assigned to an intermediate unit for services in accordance with the program of the assigned unit. 24 Pa. Stat.Ann. § 9–951 (Purdon 1987 Supp.). Like local school districts, the units are regulated by the State Board of Education and must submit a program of services to the Superintendent of Public Instruction for budgetary approval. 24 Pa.Stat.Ann. §§ 9–955, 956 (Purdon 1987 Supp.).

Intermediate units, however, receive both state "subsidies" for services performed pursuant to and authorized by law and funds from school districts and non-profit organizations. 24 Pa.Stat.Ann. § 9–957 (Purdon 1987 Supp.).[3] Further, intermediate units are infused with local character and control. Each unit has a board of directors drawn from school directors from the school districts within its territorial jurisdiction. 24 Pa.Stat.Ann. § 9–960 (Purdon 1987 Supp.). The Board has the power to elect its officers, to appoint staff personnel as necessary, to adopt a program of services authorized by the State Board of Education, and to engage in certain specified transactions. 24 Pa.Cons. Stat.Ann. §§ 9–963, 964 (Purdon 1987 Supp.). Moreover, the Board has the power and duty "[t]o receive Federal, State, school district and other moneys and expend the same to conduct programs of services." 24 Pa.Stat.Ann. § 9–964(9) (Purdon 1987 Supp.). BLaST is subject to suit as a "local agency" under the Pennsylvania Political Subdivision Tort Claims Act. 42 Pa. Cons.Stat.Ann. § 8501 et seq. (Purdon 1982).

The plaintiffs' various attempts to enforce their judgment in accordance with Pennsylvania law have been frustrated by the procedural difficulties inherent in the enforcement of a federal judgment against a state or local public agency and by the anomalous position occupied by BLaST in the framework of state and local government. We have jurisdiction under 28 U.S. C. § 1291 (1982) of the appeal from the district court's denial of the writ of mandamus. *United States v. Lee,* 786 F.2d 951, 956 (9th Cir.1986).

## II.

■ A district court is required to apply the procedural law of the forum state "in

The plaintiffs in their briefs do not challenge the district court's denial of a writ of execution, although at oral argument they suggested that their preferred remedy was the issuance of this writ. We reach only the district court's denial of the writ of mandamus.

**3.** The Commonwealth makes two forms of payment to the units: fundings for "special education" and for "general operations." 24 Pa. Stat.Ann. § 9–967.1 (general operations budget formula), § 9–968 (general operating subsidy) and § 25–2509.1 (special education) (Purdon 1987 Supp.). The Department of Public Instruction must approve the unit's special education budget. 24 Pa.Stat.Ann. § 25–2509 (Purdon 1987 Supp.). The defendant contends that deficits in special education funding must be eliminated through budget revisions since the units have no independent ability to generate such funds. On the other hand, it is undisputed that deficits in the general operating funds may be remedied in some circumstances by requiring contributions from the school districts comprising the unit. 24 Pa.Stat.Ann. § 9–970(a) (Purdon 1987 Supp.).

proceedings supplementary to and in aid of judgment, and in proceedings on and in aid of execution" unless a federal statute governs. Fed.R.Civ.P. 69(a). Rule 69 contemplates the enforcement of judgments by execution "unless the court directs otherwise." *Id.* The court is free to enforce the plaintiffs' judgment through mandamus if the writ is available under state law,[4] although reliance on state procedure must not thwart the supremacy of federal law and substantial compliance with the state procedure may be sufficient. *See Collins v. Thomas,* 649 F.2d 1203, 1206 (5th Cir. 1981), *cert. denied,* 456 U.S. 936, 102 S.Ct. 1992, 72 L.Ed.2d 455 (1982) (supremacy of federal law); 12 Wright & Miller, *Federal Practice and Procedure,* Civil § 3012, at 66–67, 69 (1973). Pennsylvania permits the use of a writ of mandamus to enforce judgments against public entities. *See, e.g., Alberts v. Urban Redevelopment Authority of Pittsburgh,* 2 Pa.Commwlth. 167, 277 A.2d 361, 362 (1971); I Antieau, *The Practice of Extraordinary Remedies* 325 (1987) (general use of writ of mandamus by judgment creditors of government entities); 24 Pa.Stat.Ann. tit. 24, § 6–611 (Purdon 1962) (provides for enforcement of judgments against school districts by mandamus execution).

We must review the district court's denial of the writ for an abuse of discretion. *Hayakawa v. Brown,* 415 U.S. 1304, 1305, 94 S.Ct. 1145, 39 L.Ed.2d 457 (1974). A refusal to grant the writ may be reversed if

it is based on clearly erroneous factual findings or an incorrect legal standard. *Lal v. Brooks,* 98 Pa.Comm. 380, 511 A.2d 277, 279 (1986); *Fallini v. Hodel,* 783 F.2d 1343 (9th Cir.1986). We review the record *de novo* to determine whether each of the requirements for mandamus have been met as a matter of law. *Fallini,* 783 F.2d at 1345.

■ The writ of mandamus is an extraordinary remedy. *Francis v. Corleto,* 418 Pa. 417, 421, 211 A.2d 503, 505 (1965); *First Jersey Securities, Inc. v. Bergen,* 605 F.2d 690, 700 (3d Cir.1979), *cert. denied sub nom. First Jersey Securities, Inc. v. Biunno,* 444 U.S. 1074, 100 S.Ct. 1020, 62 L.Ed.2d 756 (1980). Pennsylvania law requires that the writ issue only to compel official performance of a "ministerial act or mandatory duty where there exists a clear legal right in the plaintiff, a corresponding duty in the defendant and want of any other adequate remedy at law."[5] *County of Allegheny v. Commonwealth,* 507 Pa. 360, 372–73, 490 A.2d 402, 408 (1985). It is undisputed that the plaintiffs have a clear legal right to their judgment. However, BLaST argues that it does not have a duty to pay the judgment and that the plaintiffs have an adequate alternative remedy.[6]

### A. BLaST's Clear Duty to Pay

Faced with the complex conundrum thrust upon it, the district court denied the petition for the writ of mandamus because

---

4. The federal writ of mandamus has been abolished. *See* Fed.R.Civ.P. 81(b). *But see* 28 U.S.C. § 1361 (giving federal district courts original jurisdiction of any action in the nature of mandamus).

5. The parties and the district court relied upon both state and federal law; the standards are virtually identical. *Compare DeMasi v. Weiss,* 669 F.2d 114, 117 (3d Cir.1982) (the petitioner must have no other adequate means to attain the desired relief and the petitioner must show clear and indisputable right to the relief sought), *with County of Allegheny v. Commonwealth,* 507 Pa. at 372–73, 490 A.2d at 408 (1985).

6. BLaST argues in the alternative that the plaintiffs failed to join a necessary party, the Commonwealth, under Rule 19. Fed.R.Civ.P. 19. BLaST contends that the action must be remanded to the district court so that the Commonwealth can be made a party or so that the

action can be dismissed for failure to join a necessary party. Fed.R.Civ.P. 19(c). We address this issue on appeal, even though it may not have been presented in the district court. *GTE Sylvania, Inc. v. Consumer Product Safety Commission,* 598 F.2d 790, 798 (3d Cir.1979), *aff'd,* 447 U.S. 102, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980).

BLaST may indeed be forced to bring a separate action against the Commonwealth to test its claim that the Commonwealth is liable for the judgment. However, BLaST's Rule 19 claim is nonetheless barred by the equitable principle of laches here, where BLaST itself failed to join the Commonwealth despite ample opportunity. *United States v. Sabine Shell, Inc.,* 674 F.2d 480, 482–83 (5th Cir.1982). The Commonwealth has filed an amicus brief with this court contending that it is not liable for BLaST's actions.

[w]hile BLaST may owe the Plaintiffs a duty to pay the judgment, BLaST does not owe the Plaintiffs a specific plain ministerial legal duty which is devoid of the exercise of judgment or discretion and is positively commanded by law such that this court's enforcement of it is patently free from doubt.

see e.g., *Camiel v. Thornburgh*, 507 Pa. 337, 341 n. 2, 489 A.2d 1360, 1362 n. 2 (1985). BLaST contends that the district court's denial of the writ was proper because BLaST has neither the authority under state law nor the funds to pay the judgment. The Commonwealth, BLaST asserts, is the real party in interest obligated to satisfy the judgment.

■ Plaintiffs properly sued BLaST, their employer, under the Equal Pay Act. 29 U.S.C. § 203 (employees of a state or political subdivision of a state are covered by Act); § 216(b) (employers liable to employees for violations). BLaST possessed the power to enter into the employment contracts that gave rise to plaintiffs' claims; BLaST had the power to hire aides and to establish their salaries. 24 Pa.Cons. Stat.Ann. § 9–964 (Purdon 1987 Supp.). Further, it is well established that Congress intended to abrogate state immunity from suit in applying the Act's provision to state or local entities in their role as employers. *Usery v. Allegheny County Institution Dist.*, 544 F.2d 148, 155–56 (3d Cir.1976), *cert. denied sub nom. Allegheny County Institution Dist. v. Marshall*, 430 U.S. 946, 97 S.Ct. 1582, 51 L.Ed.2d 793 (1977); *see also Ende v. Board of Regents*, 757 F.2d 176 (7th Cir.1985). State procedures which might immunize state or local agencies from suit under the Act thus must give way to the supremacy of federal law.

■ BLaST nonetheless relies upon *Urbano v. Board of Managers of the New Jersey State Prison*, 415 F.2d 247 (3d Cir.

1969), *cert. denied*, 397 U.S. 948, 90 S.Ct. 967, 25 L.Ed.2d 129 (1970), to support its assertion that it is the Commonwealth, rather than BLaST, that has the mandatory duty to pay its judgment. In *Urbano*, we developed a test for distinguishing local from state entities for eleventh amendment purposes. We have no such issue here and *Urbano* therefore is not strictly relevant to the determination of whether BLaST or the Commonwealth is responsible for payment. However, even under *Urbano*, BLaST has the mandatory duty to pay the judgment at issue.

In *Urbano*, we recognized that local laws and decisions defining the status of the agency were relevant to determining whether a government agency was an arm of the Commonwealth for purposes of determining sovereign immunity. *Id.* at 250. We also noted the importance of whether the agency had the funds or power to satisfy the judgment or whether it would have to be paid from the state treasury. Finally, we examined the agency's degree of autonomy, its power to enter into contracts or to sue or be sued, and whether the sovereign has immunized itself from responsibility for the agency's operations. *Id.* at 250–51.[7]

Examining these factors in turn, BLaST offers no binding authority demonstrating that it is an arm of the Commonwealth and therefore relieved of a mandatory duty to pay judgments entered against it arising out of the exercise of its power and authority. Furthermore, it failed during the trial court litigation to implead the Commonwealth as a party defendant responsible for the payment of plaintiffs' claims. The Commonwealth asserts in an amicus curiae brief submitted in this appeal that it has no responsibility for the payment of the judgment. The legislative history of the intermediate units is not illuminating,[8] nor

---

7. Other factors noted by the *Urbano* court are of little help in determining whether BLaST is a local or state agency. 415 F.2d at 250–51 (whether agency engaged in governmental or proprietary function, classification of property for taxation).

8. There are few recorded legislative debates regarding the establishment of the intermediate units and no written legislative reports. What evidence of legislative intent exists suggests that the Commonwealth was not to be liable for all intermediate unit expenditures:

Mr. Taylor: Is there anything in this legislation that provides who is going to make the

would there appear any state case law that requires us to accept BLaST's contention.

In *Commonwealth ex rel. Waychoff v. Tekavec,* 456 Pa. 521, 524–25, 319 A.2d 1, 2–3 (1974), the Pennsylvania Supreme Court held merely that intermediate units were not school districts for the purpose of a conflict of interests statute that prohibited certain employees of "school districts" from also serving as school directors. It did not hold that intermediate units were an arm or agency of the Commonwealth. The district court's opinion in *Magill v. Appalachia Intermediate Unit 08,* 646 F.Supp. 339 (W.D.Pa.1986), relied on by BLaST, is of greater relevance. There the court concluded, after only a sparse analysis, that an intermediate unit was a part of a state agency and was thus immune from a § 1983 suit under the eleventh amendment. *Id.* at 341. This holding is not binding upon this court and, based on our remaining analysis, we reject it.[9]

Turning to the next factor, BLaST appears to have the necessary funds to pay the judgment. BLaST has maintained a bank account with attached funds sufficient to satisfy the judgment in this action since June 27, 1985. Although the money may be intended to meet other needs, this neither alters its existence nor its availability to meet the judgment. BLaST also has available the interest earned on state funds and the proceeds from its insurance policy. BLaST strenuously argues, without cita-

tion to authority, that any attempt to extract funds from it will inevitably require payment by the Commonwealth. BLaST merely asserts that "[t]he Commonwealth would ... have to provide supplemental funding to prevent a curtailment of programs and a furloughing of employees."

BLaST's contention has no merit. Initially, we note that BLaST's operations have not been curtailed by the original attachment of its funds. Further, BLaST has made no serious effort to satisfy the judgment even within its state law authority. BLaST has not followed state law and submitted a budget that includes the sums necessary for payment of the judgment. BLaST may have requested payment from the Department of Education, but this request apparently was not made within the framework of the required budgetary process. Pennsylvania law permits the intermediate unit to expend up to eight percent of its budget on salaries, but BLaST has never budgeted the maximum amount. BLaST cannot have it both ways; it asserts that payment may only be made from budgeted amounts, but it has failed to submit a budget containing a request for funds to pay the judgment.

BLaST argues that it does not have the power to satisfy the judgment because state law limits its operations: BLaST cannot pay out funds for non-budgeted expenditures.[10] However, this argument founders on the precedential shoals that

deficit for these services once they are established and get rolling?

Mr. Homer: Mr. Speaker, the intermediate unit board will act *exactly as the county school boards act today.* If the budgets are recommended and approved and there is not enough state money to cover the funding of the intermediate program, then the local school districts must contribute just as they are today.... There is no difference in what we would establish as far as funding the intermediate unit and as the county offices are being funded today; this is not changed.

Debate, Pennsylvania Legislative Journal— House 241 (March 4, 1969) (emphasis added).

9. BLaST also observes that the United States Congress has apparently recognized intermediate units in Pennsylvania as arms of the Commonwealth rather than as local entities. *See,* Explanatory Statement of the Committee of Con-

ference, S.Rep. No. 94–455, 94th Cong., 1st Sess., *reprinted in,* 1975 U.S.Cong. & Admin.News 1425, 1485. Congress' understanding of Pennsylvania's statutory scheme is not determinative here.

10. BLaST contends that funds for the payment of the judgment must come from the "special education" budget, funded exclusively by the Commonwealth, rather than from the "general operations budget," which may be subsidized by local school districts. This proposition, even if correct, is irrelevant to whether BLaST is responsible for the payment of the judgment entered against it. True, the judgment rendered by the district court pertained to the insufficiency of the salaries paid plaintiffs out of the special education budget, but how the intermediate unit allocates the payment of the judgment is its responsibility and in no way minimizes or alters its duty to pay the judgment.

support the enforcement of a federal judgment even where state law bars the seizure of funds or the payment of a judgment without legislative appropriation. State and local entities may not frustrate the supremacy of federal law through the adoption of immunizing procedures or vague statutory schemes. Some courts of appeals have approved the power of the district court to order a state agency to pay a money judgment, even without the aid of a writ of mandamus.

In *Gary W. v. State of Louisiana*, 622 F.2d 804 (5th Cir.1980), *cert. denied*, 450 U.S. 994, 101 S.Ct. 1695, 68 L.Ed.2d 193 (1981), the Fifth Circuit Court of Appeals held that a federal district court had the power to order a state agency to pay a money judgment from its funds notwithstanding a provision of the state constitution prohibiting payment of a judgment against the state except from funds appropriated for such purpose by the state legislature. The court stated that "an order directing the responsible state official to satisfy the judgment out of state funds is the only reasonable way to ensure compliance with a valid federal judgment." *Id.* at 807. Likewise, in *Collins v. Thomas*, 649 F.2d 1203 (5th Cir.1981), *cert. denied*, 456 U.S. 936, 102 S.Ct. 1992, 72 L.Ed.2d 455 (1982), the court affirmed a Rule 69 order that required the defendant sheriff to pay an attorney fee award out of county funds under his control, notwithstanding a state law prohibiting the execution of judgments against counties.[11]

Finally, the degree of local autonomy and control over BLaST is important. Local school district directors control BLaST's activities. The intermediate units receive only "subsidies" from the state and may also receive funds from school districts and other sources. BLaST was authorized to enter into the hiring contracts that form the basis of this suit. Unlike the government entity at issue in *Philadelphia Facility Management Corp. v. Biester*, 60 Pa. Commw. 366, 431 A.2d 1123 (1981), cited by the defendants, BLaST has an independent existence exemplified by autonomy and authority over a wide range of transactions, including the right to contract, to hire, and fire, to sue and be sued. Nothing exempts it from the payment of its debts, especially a judgment of a federal court rendered in response to a violation of federal law.

In summary, BLaST substantially enjoys the characteristics of the former county board of school directors and a local school district, although it is undeniably not technically a school district under state law. *See Commonwealth ex rel. Waychoff v. Tekavec*, 456 Pa. at 524–25, 319 A.2d at 2–3. We are concerned here, however, only with determining whether BLaST has a duty and ability to pay the judgment against it. Like school districts, intermediate units are highly regulated by the state and receive large state subsidies. Both exhibit autonomy in local decision-making. In fact, local school districts control intermediate units; the intermediate unit board is composed entirely of school

---

**11.** Attorney fee litigation under 42 U.S.C. § 1988 has provided fertile ground for attempts to enforce the collection of judgments in the federal courts against state or local government entities. Court orders directing payment have been premised on either Rule 69 or 70. *See, e.g., LaRaza Unida v. Volpe*, 545 F.Supp. 36, 39 (M.D. Cal.1982) (court approves writ of execution against state department of transportation under Rule 69 even though state law required that attorney fee awards be paid by legislative appropriation and none had been made); *Gates v. Collier*, 616 F.2d 1268 (5th Cir.1980) (district court within its authority in ordering state auditor to issue a warrant upon state treasurer and ordering the state treasurer in turn to satisfy judgment).

In this case, the court might have been empowered to issue an order directing BLaST to pay the judgment against it under Rule 70, even if such an order was not permissible under state enforcement procedure. Fed.R.Civ.P. 70. Rule 70's equitable remedies are ordinarily not applied to the enforcement of a monetary judgment. 7–Pt. 2 *Moore's Federal Practice* ¶ 69.03[2] (2d ed. 1978). However, a district court may order payment under Rule 70 in unusual circumstances, as where state intransigence precludes the enforcement of the judgment through normal procedures. *See, e.g., Spain v. Mountanos*, 690 F.2d 742, 744–45 (9th Cir.1982) (such order may be appropriate where state refuses to appropriate funds to satisfy judgment through the normal process provided by state law); *Gates v. Collier*, 616 F.2d 1268, 1271 (5th Cir.1980).

district directors.[12] Like a school district, BLaST has the power to engage in the transactions forming the basis of this suit. BLaST is amenable to suit under federal law and state tort law. *See EEOC v. BLaST Intermediate Unit 17*, Civ. No. 85–0774 (M.D.Pa. Oct. 24, 1985); 42 Pa.Cons. Stat.Ann. § 8501 (Purdon 1982) (intermediate units are non-Commonwealth agencies for purposes of determining immunity from tort liability).

We believe that BLaST is playing cat and mouse with the plaintiffs in an intolerable effort to obstruct the payment of a meritorious judgment. BLaST is an employer liable for judgments under the Equal Pay Act. It has the funds from which to draw to pay the judgment. We therefore hold that as an entity enjoying statutory powers to hire and fire employees, possessing substantial characteristics of a local school district, and having sufficient funds in its possession upon which it could draw, BLaST has a clear and non-discretionary duty to pay a federal judgment as a matter of law. As an appropriate enforcement remedy under Pennsylvania state law, *Alberts v. Urban Redevelopment Authority of Pittsburgh*, 2 Pa.Commw. 167, 277 A.2d 361, 362 (1971), we see no reason whatever not to employ the writ to prevent the frustration of congressional intent in adopting the Equal Pay Act.

### B. Absence of Alternative Remedy

Because mandamus is an extraordinary remedy, the plaintiffs may still be denied mandamus relief where there is an alternative procedure to collect their judgment. *See, e.g., Garchinsky v. Borough of Clifton Heights*, 437 Pa. 312, 263 A.2d 467 (1970); *Hondros v. U.S. Civil Service Comm'n*, 720 F.2d 278, 297 (3d Cir.1983). BLaST argues that mandamus relief is not appropriate because the plaintiffs are cur-

rently pursuing alternative remedies in other courts.[13] This contention also has no merit.

The plaintiffs have intervened in a state court action between BLaST and its insurer. *BLaST Intermediate Unit 17 v. CNA Ins. Corp. and American Cas. Co.*, No. 87–00211 (Lycoming Co. Ct.Comm. Pleas). This action does not provide the plaintiffs with an alternative remedy, however, because BLaST's insurer may not be required to indemnify BLaST unless BLaST is ordered to pay the judgment. BLaST also argues that the plaintiffs might obtain relief through an EEOC action that has been brought against BLaST and the Commonwealth. *EEOC v. BLaST Intermediate Unit 17 and the Commonwealth*, No. CV 85–0774 (M.D.Pa.). However, the EEOC action will not provide a forum in which the plaintiffs can satisfy their judgment.

### III.

Accordingly, the judgment of the district court will be reversed and the case remanded with directions to issue a writ of mandamus ordering BLaST to pay the judgment that the district court had entered against it.

Costs taxed against the appellee, BLaST.

---

12. We note that employees of the intermediate unit are eligible for membership in the Public School Employees' Retirement System, although members of the State Employees' Retirement System may elect to remain so. 24 Pa.Stat.Ann. § 9–963(g) (Purdon 1987 Supp.). Professional employees are accorded the same employment right as professional employees of school district. 24 Pa.Stat.Ann. § 9–963(e) (Purdon 1987 Supp.).

13. BLaST also argues that the plaintiffs had an alternative remedy because they could have proceeded against the Commonwealth. This argument recapitulates earlier assertions and is without merit for the same reasons.