# IN THE SUPREME COURT OF PENNSYLVANIA
## MIDDLE DISTRICT

| | | |
|---|---|---|
| ALTON D. BROWN, | : | No. 125 MAP 2016 |
| | : | |
| Appellant | : | Appeal from the Order of the |
| | : | Commonwealth Court at 318 MD 2015, |
| | : | dated September 9, 2016. |
| v. | : | |
| | : | |
| | : | |
| JOHN E. WETZEL, | : | |
| | : | |
| Appellee | : | |

## DISSENTING STATEMENT

**JUSTICE WECHT**                                                    **FILED:  January 18, 2018**

I respectfully dissent.

As a prisoner, Alton D. Brown necessarily has lost those privileges of citizenship that are fundamentally incompatible with his incarceration.  Nonetheless, inmates retain certain inalienable rights, including the right to due process and the right to the equal protection of our laws.  *See Hudson v. Palmer*, 468 U.S. 517, 523 (1984) (noting that prisoners retain "those rights not fundamentally inconsistent with imprisonment itself or incompatible with the objectives of incarceration," including the rights to due process, equal protection, freedom of speech and religious expression, and freedom from cruel and unusual punishment).  One right attending Brown's status as "a legal resident of the United States," 65 P.S. § 67.102, is the statutory right to access public information under Pennsylvania's Right-To-Know Law ("RTKL"), 65 P.S. §§ 67.101-67.3104.  It is

this right that, in the instant case, Brown alleges has been subject to impermissible interference by DOC.[1]

Pursuant to a RTKL request, the Pennsylvania Department of Environmental Protection ("DEP") granted Brown access to reports containing the results of DEP water inspections at two state correctional facilities. By his own averment, Brown sought this public information "as a part of his ongoing investigation into SCI-Smithfield's drinking water contamination." *See* Petition for Review, 6/19/2015, ¶ 9. Brown was charged approximately $100.00 to receive the reports from DEP. *Id.* at ¶ 4. When the package containing the reports arrived in the correctional facility's mail room, DOC employees confiscated and retained it for approximately three weeks. At that point, DOC notified Brown that it had received the package and that "he was required to send it back out of the prison, or it would be destroyed." *Id.* at ¶ 5. DOC provided no reason for the confiscation.

Having been denied the reports, access to which DEP already had determined that Brown was entitled pursuant to the RTKL, Brown sought redress through DOC's internal grievance process. Brown submitted a grievance in which he alleged that DOC: had violated his rights under the RTKL; had provided no reasons or justifications for the confiscation; and had violated its own policies regarding inmate mail access. DOC denied Brown's grievance, and the initial grievance response was upheld throughout Brown's administrative appeals. *Id.* at ¶ 8. However, "[n]one of the appeal responses

---

[1]   Because Brown's petition for review in the nature of mandamus was dismissed pursuant to DOC's preliminary objections, our standard of review requires that "we accept as true all well-pleaded material facts set forth in the [petition for review] and all inferences fairly deducible from those facts." *Kuren v. Luzerne Cty.*, 146 A.3d 715, 718 n.1 (Pa. 2016) (bracketed material in original) (quoting *Robinson Twp. v. Commonwealth*, 83 A.3d 901, 917 (Pa. 2013)).

provided any justifications" as to why the "inspection reports constituted contraband" that Brown was not entitled to possess. *Id.* at ¶ 9.

Left without any other legal recourse, Brown filed a petition for review in the Commonwealth Court's original jurisdiction, seeking mandamus relief upon the basis that he was entitled to the DEP reports, which do not fit the definition of contraband under DOC's policies. John E. Wetzel, Secretary of DOC and the named defendant in this matter, filed preliminary objections in the nature of a demurrer, arguing that Brown was ineligible for mandamus relief because he had established no clear legal right to access the reports, because, as a prisoner, Brown does not enjoy the same rights as non-incarcerated citizens, and because DOC had a prerogative to employ its discretion in assessing potential security concerns, the exercise of which must be afforded deference by our courts. Wetzel further argued that, due to Brown's status as an "abusive litigator,"[2] his petition should be dismissed under the PLRA's "three strikes" provision, which permits a court to dismiss "prison conditions litigation" if "the prisoner has previously filed prison conditions litigation and . . . three or more of these prior civil actions have been dismissed" for frivolousness, maliciousness, for failure to state a claim, or upon the basis of a valid affirmative defense. 42 Pa.C.S. § 6602(f).

The Commonwealth Court sustained the preliminary objections and dismissed Brown's petition. *See Brown v. Wetzel*, 318 M.D. 2015, 2016 WL 4709887 (Pa. Cmwlth. Sept. 9, 2016) (unpublished). Relying upon the general principle that mandamus will not lie to compel a discretionary act, the Commonwealth Court found that "DOC's decision to confiscate records from a current inmate relating to air, water

---

[2]    See *Brown v. Pa. Dep't of Corr.*, 913 A.2d 301, 306 (Pa. Cmwlth. 2006) (Brown "is a well-qualified abusive litigator within the meaning of the PLRA"); *Brown v. James*, 822 A.2d 128, 130-31 (Pa. Cmwlth. 2003) (identifying numerous instances in which Brown's claims have been dismissed for frivolousness or for failure to state a claim).

and waste water monitoring of infrastructure at two state correctional facilities clearly relates to an internal security matter within the discretion of DOC." *Id.* at *3. Because DOC has broad discretion to make such judgments regarding potential security concerns, the Commonwealth Court held that Brown's request for mandamus relief could not prevail.

The court further held that Brown failed to establish a right to possess the records at issue because "[a]n inmate does not have the same right to possess records as a non-incarcerated citizen." *Id.* The Commonwealth Court relied upon a nonprecedential decision in which it had determined that a prisoner could be denied access to the first names of corrections officers pursuant to one of the RTKL's enumerated exceptions, and had further opined that the prisoner could be denied access to the records even if the exception did not apply. *Id.* (quoting *Stein v. Office of Open Records*, 1236 C.D. 2009, 2010 WL 9511502 (Pa. Cmwlth. May 19, 2010) (unpublished)).[3] In *Stein*, the Commonwealth Court had relied upon this Court's decision in *Bronson v. Central Office Review Committee*, 721 A.2d 357 (Pa. 1998), for the proposition that "[i]nmates do not enjoy the same 'panoply of rights' as non-incarcerated citizens." *Stein*, 2010 WL 9511502, at *5 (quoting *Bronson*, 721 A.2d at 359). Accordingly, the Commonwealth Court concluded here that Brown had no right to possess the DEP records, without regard to the validity of his request under the RTKL.

---

[3] In *Stein*, the Commonwealth Court held that the corrections officers' first names were exempt from disclosure under the RTKL's personal security exception. *See* 65 P.S. § 67.708(b)(1)(ii) (exempting from disclosure a record that "would be reasonably likely to result in a substantial and demonstrable risk of physical harm to or the personal security of an individual"). As such, the *Stein* court's statement that, even if it were to hold otherwise, DOC nevertheless could prohibit the inmate's access to the information, was *dictum*. *See Stein*, 2010 WL 9511502, at *5.

The Commonwealth Court concluded as well that mandamus would not lie, because Brown was not without an alternative remedy. Brown's remedy, the court determined, could be obtained through DOC's inmate grievance process. The court stated that "[o]ur courts recognize that DOC's grievance process is constitutionally adequate." *Brown*, 2016 WL 4709887, at *4 (citing *McEachin v. Beard*, 319 F.Supp.2d 510 (E.D. Pa. 2004); *Waters v. Pa. Dep't of Corr.*, 509 A.2d 430 (Pa. Cmwlth. 1986)). Because Brown had sought redress through that administrative process, the court concluded that he was unable to pursue mandamus relief in the courts of this Commonwealth.

Alternatively, the Commonwealth Court determined that Brown's petition must be dismissed pursuant to Subsection 6602(e)(2) of the PLRA. The court recognized that the provision applies only to the dismissal of "prison conditions litigation" which, *inter alia*, "is frivolous or malicious or fails to state a claim upon which relief may be granted." 42 Pa.C.S. § 6602(e)(2). Because the court determined that Brown had failed to state a claim for mandamus relief, Subsection 6602(e)(2) could be invoked as a basis to dismiss Brown's claim, but only if the instant action constituted "prison conditions litigation." The court recited the PLRA's definition of the term: "[a] civil proceeding arising in whole or in part under Federal or State law with respect to the conditions of confinement or the effects of actions by a government party on the life of an individual confined in prison." *Brown*, 2016 WL 4709887, at *5 (quoting 42 Pa.C.S. § 6601). Although Brown's petition did not raise any claims related to the conditions of his confinement or concerning his quality of life, the Commonwealth Court nonetheless concluded that the instant petition constituted "prison conditions litigation." The Commonwealth Court reasoned as follows:

> We conclude that this Petition qualifies as "prison conditions litigation" within the statutory definition. [Brown] seeks return of his property

confiscated by DOC. Also, he allegedly plans to use the confiscated records to continue his investigation into drinking water contamination at a state correctional facility. Further, he avers improper retaliatory transfer. Because the Petition fails to state a claim for mandamus relief, and thereby violates [Subs]ection 6602(e)(2) of the PLRA, dismissal is required.

*Id.* (citation omitted).

Finally, the Commonwealth Court rejected Brown's claim that his petition could be filed in both that court's appellate and original jurisdiction. The matter properly was within the Commonwealth Court's original jurisdiction because it was a proceeding brought against a Commonwealth party—the Secretary of DOC. *Id.* (citing 42 Pa.C.S. § 761(a)(1)). However, the court already had determined that Brown failed to state a claim for mandamus relief, and that his claim was subject to dismissal under the PLRA. Accordingly, the Commonwealth Court sustained Wetzel's preliminary objections and dismissed Brown's petition with prejudice. Brown took a direct appeal to this Court. *See* 42 Pa.C.S. § 723(a) (providing this Court with jurisdiction over direct appeals "from final orders of the Commonwealth Court entered in any matter which was originally commenced in the Commonwealth Court").

Brown raises five issues for our review.[4] He argues that mandamus was a viable cause of action under the circumstances, that the RTKL process sufficiently protected

---

[4] Reproduced verbatim, Brown's stated issues are as follows:

1. Whether mandamus lies to compel an agency's compliance with the [RTKL]?
2. Whether [the RTKL] provisions sufficiently protect the [DOC] from disclosure of sensitive internal security matter[s] to prisoners during the RTKL proceedings[,] thereby precluding it from confiscating prisoners['] documents obtained from other government agencies via the RTKL?
3. Whether the Commonwealth Court erred in its decision that [Brown] is not entitled to due process property protections as a result of the confiscation of his RTKL materials that were taken pursuant to policy/corrupted process?
(continued…)

DOC's interest in preventing the disclosure of information that could raise security concerns, that the confiscation of the documents deprived him of property interests for purposes of due process, that the instant action does not constitute "prison conditions litigation" within the meaning of the PLRA, and that he should be entitled to seek another exception to dismissal under the PLRA, should the Commonwealth Court's reasoning on that issue prevail.

Because this matter arises from an order sustaining preliminary objections in the nature of a demurrer, our standard of review requires us to determine "whether, on the facts averred, the law says with certainty that no recovery is possible." *Bruno v. Erie Ins. Co.*, 106 A.3d 48, 56 (Pa. 2014) (citation and internal quotation marks omitted). "We will affirm an order sustaining preliminary objections only if it is clear that the party filing the petition for review is not entitled to relief as a matter of law." *Kuren*, 146 A.3d at 718 n.1.

Should the instant petition be deemed to advance "prison conditions litigation" that is subject to dismissal under the PLRA, any further consideration would be unnecessary. Accordingly, I begin with the Commonwealth Court's classification of the instant cause of action. As the Commonwealth Court correctly observed, "prison conditions litigation" is defined, in relevant part, as a "civil proceeding arising in whole or in part under Federal or State law with respect to the conditions of confinement or the

---

(…continued)
4. Whether a legal challenge concerning the propriety of a government agency's conduct during the RTKL process constitute[s] prison condition litigation within the meaning of the [PLRA]?
5. Whether [Brown] should be afforded the opportunity to pay the filing fees in the event this Court reverses the Commonwealth Court's decision regarding the merits, but affirms its decision regarding the application of the [PLRA]?

Brief for Brown at 1-2 (capitalization and numbering modified).

effects of actions by a government party on the life of an individual confined in prison." 42 Pa.C.S. § 6601. Here, although Brown concedes that he intends, at some point in the future, to use the DEP reports to investigate drinking water conditions at certain correctional facilities, none of Brown's instant averments relate to water quality, nor do they otherwise allege that he is subject to unsanitary, inhospitable, or objectionable living conditions. Although he alleges that DOC has deprived him of various constitutional and statutory rights, he does not allege that any particular act of any agent of DOC has negatively impacted his quality of life or the conditions of his confinement. Plainly, the gravamen of Brown's averments simply is that he was entitled to access certain documents pursuant to the RTKL, and DOC deprived him of that right without explanation or justification.

It is immaterial that Brown intends to use the requested documents in furtherance of an investigation into water contamination at correctional facilities, even if he plans to use the results of such an investigation as the basis for *future* prison conditions litigation.[5] The definition of "prison conditions litigation" does not include requests for documents that may bear upon prison conditions, or that may serve as the foundation of some future claim. The Commonwealth Court's other observations—that Brown seeks the return of confiscated materials and that he alleges a retaliatory transfer—also do not implicate the statutory definition or otherwise transform Brown's cause of action into "prison conditions litigation."

---

[5] Parenthetically, pursuant to the RTKL, a requestor's reasons for seeking access to a public record, as well as the intended uses of a public record, are irrelevant considerations. *See* 65 P.S. § 67.301(b) ("A Commonwealth agency may not deny a requestor access to a public record due to the intended use of the public record by the requestor unless otherwise provided by law."); 65 P.S. § 67.703 ("A written request need not include any explanation of the requestor's reason for requesting or intended use of the records unless otherwise required by law.").

In another recent decision involving Brown, DOC, a RTKL request, and an assertion that the request at issue constituted "prison conditions litigation" warranting dismissal under the PLRA, the Commonwealth Court provided a far more persuasive analysis. In *Brown v. Department of Corrections*, 1959 C.D. 2016, 2017 WL 3799023 (Pa. Cmwlth. Sept. 1, 2017) (unpublished), Brown's RTKL request for documents involving the administration of prisons was denied due to outstanding fees for copy charges from a previous RTKL request. On appeal, DOC argued, as in the instant case, that Brown's cause of action constituted "prison conditions litigation" under the PLRA. The Commonwealth Court disagreed:

> [E]ven though the RTKL request may be seeking prison documents, it is not "prison conditions litigation" because such a request does not seek to remedy any prison condition or anything that prison officials do or do not do that impact a person in prison. The RTKL makes no distinction between prisoners and other citizens. The present request only seeks to access public documents that any citizen of Pennsylvania can access for any reason. Moreover, it is irrelevant why documents are requested.

*Id.* at *1. Consistent with this approach, and in light of the fact that the instant petition raises no claims related to "the conditions of confinement or the effects of actions by a government party on the life of an individual confined in prison," 42 Pa.C.S. § 6601, the Commonwealth Court erred in concluding that Brown's cause of action constituted "prison conditions litigation" subject to dismissal under the PLRA.

Turning to Brown's requested relief, it is well-established that mandamus is "an extraordinary writ which will issue to compel performance of a ministerial act or mandatory duty where there exists a clear legal right in the petitioner, a corresponding duty in the respondent, and want of any other adequate and appropriate remedy." *Duncan v. Pa. Dep't of Corr.*, 137 A.3d 575, 576 (Pa. 2016). Brown points to a number of circumstances in which this Court has clarified or qualified the permissible extent of

the writ.  Brown notes that mandamus may lie to compel the performance of a legal duty, "even where the existence and scope of such duties must be found and defined in the course of the mandamus action itself."  *Del. River Port Auth. v. Thornburgh*, 493 A.2d 1351, 1355 (Pa. 1985); *see* Brief for Brown at 8.  Further, Brown notes that "mandamus will lie to compel action by an official where his refusal to act in the requested way stems from his erroneous interpretation of the law."  *Fagan v. Smith*, 41 A.3d 816, 818 (Pa. 2012); *Volunteer Firemen's Relief Ass'n of City of Reading v. Minehart*, 203 A.2d 476, 479-80 (Pa. 1964); *see* Brief for Brown at 8.

Additionally, this Court has noted that, although "mandamus will not ordinarily lie to compel a series of particular acts or conduct, or to compel the performance of a particular discretionary act, it is available to direct that discretion be exercised." *Thornburgh*, 493 A.2d at 1355-56.  Most importantly herein, "[w]here the action sought to be compelled is discretionary, mandamus will not lie to control that discretionary act, . . . but courts will review the exercise of the actor's discretion *where it is arbitrary or fraudulently exercised* or is based upon a mistaken view of the law."  *Banfield v. Cortes*, 110 A.3d 155, 175 (Pa. 2015) (emphasis added).  *See also Pa. State Ass'n of Cty. Comm'rs v. Commonwealth*, 681 A.2d 699, 702 (Pa. 1996) (mandamus will not lie to control discretionary acts, but "courts will review the exercise of the actor's discretion where it is arbitrary or fraudulently exercised or is based upon a mistaken view of the law"); *Camiel v. Thornburgh*, 489 A.2d 1360, 1362 n.2 (Pa. 1985) ("Mandamus does not lie to compel the performance of discretionary acts except where the exercise or non-exercise of discretion is arbitrary, fraudulent, or based upon a mistaken view of the law."); *Young Men & Women's Hebrew Ass'n v. Borough Council of Borough of Monroeville*, 240 A.2d 469, 472 (Pa. 1968) (quoting *Commercial Prop., Inc. v. Peternel*, 211 A.2d 514, 517 (Pa. 1965)) ("Mandamus will not lie to control the exercise of official

discretion, but it will issue to compel the exercise of discretion or to prevent the arbit[r]ary or fraudulent exercise thereof.").

In the instant case, the Commonwealth Court determined that Brown could not state a claim for mandamus relief because the deprivation of the requested records was an exercise of DOC's *discretion* to assess potential security concerns. Wetzel endorses this conclusion. However, throughout these proceedings, Wetzel never has offered any explanation as to how the DEP reports constituted contraband, or how they posed any threat to the security of a correctional institution, or to any inmates or staff thereof. If DOC did, indeed, assess the public records at issue and determine that they raised "security concerns," then some articulable justification for that decision must exist. No details of the reason for that decision have been provided to Brown, and none are provided to this Court. Rather, as in the court below, Wetzel asserts only that "legitimate security concerns governed the decision to confiscate the material." Brief for Wetzel at 8. A court must accept this decision, Wetzel argues, because "[DOC's] determination that security concerns effected the confiscation of the records from DEP must be afforded deference." *Id.* at 9.

The courts of this Commonwealth routinely dismiss the claims of incarcerated, *pro se* litigants upon the basis that their arguments are bald and conclusory, or that their averments are not accompanied by citation to support in the record. We should not so quickly overlook similarly threadbare assertions from the agencies of our own government, which are afforded far more substantial resources, and whose interests are protected and advanced by learned counsel. If DOC exercised its discretion in a justifiable manner, then some explanation of its reasoning, however minimal, should be offered in support of its determination.

I am unconvinced by Wetzel's generalized argument that, because DOC exercised discretion in assessing security concerns, we must defer to its determination *in toto*, and without inquiry into the reasons, if any, for its decision. Deference to the discretionary functions of administrative agencies and lower tribunals is a core principle in our law. Nonetheless, "discretion" and "deference" cannot be elevated to talismanic status such that they become "magic words," the invocation of which forces a reviewing court to close its eyes to arbitrary or vindictive decisions. Nor can such words insulate those decisions from judicial scrutiny, "render[ing] appellate review a mere empty formality." *Pittman v. Pa. Bd. of Prob. & Parole*, 159 A.3d 466, 474 (Pa. 2017) (holding that Parole Board's denial of credit for time spent at liberty on parole by mere act of checking "No" on report was not a sufficient exercise of discretion, and a contrary holding would render appellate review "a mere empty formality as . . . any decision by the Board must be affirmed, even if the Board acts arbitrarily or . . . misinterprets and misapplies the law," a result that "comports neither with the Pennsylvania Constitution's grant of review by a court of record, nor with basic notions of due process.").

With respect to the breadth of DOC's discretion and the reasonable extent of judicial deference thereto, I find Justice John Paul Stevens' concurring and dissenting opinion in *Hudson* instructive. *Hudson* concerned, *inter alia*, the seizure and destruction of an inmate's noncontraband personal property, which included legal materials and letters. Justice Stevens wrote:

> It is well-settled that the discretion accorded prison officials is not absolute. A prisoner retains those constitutional rights not inconsistent with legitimate penological objectives. There can be no penological justification for the seizure alleged here. There is no contention that Palmer's property posed any threat to institutional security. Hudson had already examined the material before he took and destroyed it. The allegation is that Hudson did this for no reason save spite; there is no contention that under prison regulations the material was contraband, and in any event as I have indicated above the Constitution prohibits a State

> from treating letters and legal materials as contraband. . . . When, as here, the material at issue is not contraband it simply makes no sense to say that its seizure and destruction serve "legitimate institutional interests." Such seizures are unreasonable.

*Hudson*, 468 U.S. at 547-49 (Stevens, J., concurring and dissenting) (citations omitted).

Likewise here, absent any assertion that the DEP reports constituted contraband, and absent any reasonable description of the purported security risk that they posed, Brown's averments support a finding that the exercise of DOC's discretion was arbitrary, such that mandamus could be a viable remedy. *See Banfield*, 110 A.3d at 175; *Camiel*, 489 A.2d at 1362 n.2; *Young Men & Women's Hebrew Ass'n*, 240 A.2d at 472. Indeed, Brown frames portions of his argument in precisely those terms. *See* Brown's Resp. to Prelim. Obj., 7/31/2015, at ¶ 19 (arguing that the RTKL "affords [Brown] the right not only to participate in the process, but also the right to possess the information obtained through the process without it being arbitrarily confiscated/denied by the government") (emphasis omitted); Brown's Brief in Resp. to Prelim. Obj., 2/10/2016, at 5 (arguing that DOC cannot wait for the RTKL process to conclude and then "confiscate documents arbitrarily"); Brief for Brown at 12 ("[T]he gravamen of the Petition is the arbitrary and unjust interference with [Brown's] RTKL proceedings . . . .").

Standing alone, a demonstration that DOC's discretion was exercised arbitrarily may not provide sufficient grounds for mandamus relief. A litigant requesting the writ must show a clear right to the remedy sought and the absence of an adequate alternative remedy. *See, e.g., Duncan*, 137 A.3d at 576. Here, Brown's right to access the DEP reports is prescribed by statute. Although the right of access to public records under the RTKL has numerous express limitations, including thirty enumerated exceptions restricting access to certain types of records, *see* 65 P.S. § 67.708(b), the RTKL contains no categorical exclusion for inmates of correctional facilities. Rather, as it concerns natural persons, a "requester" under the RTKL is defined broadly as "[a]

person that is a legal resident of the United States and requests a record pursuant to this act." 65 P.S. § 67.102. Moreover, this Court has noted that, due to the remedial nature of the RTKL, exceptions to its disclosure mandate are to be construed narrowly, in furtherance of the law's overall goal of promoting government transparency. *See Pa. State Police v. Grove*, 161 A.3d 877, 892 (Pa. 2017).

There is no binding justification for the Commonwealth Court's conclusion that, due solely to his status as a prisoner, Brown's rights under the RTKL are categorically and summarily limited. Relying upon the *dictum* in its nonprecedential decision in *Stein*, which, in turn, relied upon a decontextualized statement from this Court in *Bronson*, the Commonwealth Court determined that "[a]n inmate does not have the same right to possess records as a non-incarcerated citizen." *Brown*, 2016 WL 4709887, at *3. This conclusion purportedly emanated from *Bronson*, in which, the Commonwealth Court suggested, this Court held that "[i]nmates do not enjoy the same 'panoply of rights' as non-incarcerated citizens." *Stein*, 2010 WL 9511502, at *5 (quoting *Bronson*, 721 A.2d at 359). In context, however, *Bronson*'s reference to the limitations placed upon a prisoner's constitutional rights related to claims advanced within the inmate grievance process, which differ from criminal trials and appeals with regard to the extent of constitutional protections required. In the passage partially quoted by the court below, the *Bronson* Court explained:

> Unlike the criminal trial and appeals process where a defendant is accorded the full spectrum of rights and protections guaranteed by the state and federal constitutions, and which is necessarily within the ambit of the judiciary, the procedures for pursuing inmate grievances and misconduct appeals are a matter of internal prison administration and the "full panoply of rights due a defendant in a criminal prosecution is not necessary in a prison disciplinary proceeding . . . ." *Robson v. Biester*, 420 A.2d 9, 12 (Pa. Cmwlth. 1980) (citing *Wolff v. McDonnell*, 418 U.S. 539 (1974)).

*Bronson*, 721 A.2d at 358-59 (citations modified). Plainly, *Bronson*'s statement that prisoners do not enjoy the "full panoply" of constitutional rights was a contrast between the internal inmate grievance process and the procedures attending a criminal prosecution. *Bronson* does not stand for the proposition that inmates in a correctional facility have diminished rights under the RTKL, as the Commonwealth Court seemed to suggest. *Bronson*'s "panoply of rights" passage cannot fairly be construed as shorthand for the deprivation of a right guaranteed by statute, where the terms of the statute do not expressly so provide. The rights retained during incarceration are limited, but we have an intelligible standard by which to differentiate between those rights that are forfeited and those that are retained. Prisoners must "be accorded those rights not fundamentally inconsistent with imprisonment itself or incompatible with the objectives of incarceration." *Hudson*, 468 U.S. at 523. Mere observation that the full "panoply of rights" are not available to prisoners in all circumstances does not support a conclusion that a court may select at will the rights to be protected and those that are to be foregone.

Brown complied with the RTKL process, and, after a legal review, DEP determined that the requested reports were public records not subject to any statutory exception. This procedure granted Brown, the "requestor," a statutory "right to know" the information contained within those reports. In many cases, this conclusion may not be dispositive as it concerns a prisoner's right of access. I would not foreclose the possibility that a public record may, in some circumstances, raise a legitimate security concern that could justify the DOC's decision to deny an inmate's access to the record, despite a valid RTKL request. This was the thrust of the Commonwealth Court's *dictum* in its nonprecedential decision in *Stein*, upon which that court relied, at least in part, in the instant case. In *Stein*, however, the RTKL request at issue included an inmate's

request for the first names of corrections officers—information that conceivably could pose a threat to those officers' safety. Here, as noted, no explanation ever has been offered as to the nature of the security concern that the DEP records presented, and none is apparent from the description of their contents. In certain circumstances, DOC's discretion to assess security concerns may impact the determination of whether an inmate possesses a clear right to access information obtained through a RTKL request. But, where that discretion is exercised arbitrarily, and where no credible assertion is offered as to the alleged security concern animating the decision to confiscate a public record, the RTKL provides a clear statutory right to possess such records.

Finally, in order to state a claim for mandamus relief, Brown must demonstrate that he had no alternative, adequate remedy. Here, the Commonwealth Court concluded that Brown could not establish this prerequisite because he pursued, albeit unsuccessfully, a remedy through DOC's internal inmate grievance process. I disagree. The Commonwealth Court observed that "[o]ur courts recognize that DOC's grievance process is constitutionally adequate." *Brown*, 2016 WL 4709887, at *4 (citing *McEachin*, 319 F.Supp.2d 510; *Waters*, 509 A.2d at 433). However, this Court never has so held, and the cases upon which the Commonwealth Court relied do not bind us. In fact, in *McCray v. Pennsylvania Department of Corrections*, 872 A.2d 1127 (Pa. 2005), this Court concluded that, for purposes of mandamus, the inmate grievance process did not provide an adequate remedy for an inmate's request for recalculation of his sentence, noting, *inter alia*, that "the General Assembly has not conferred the authority to consider matters of law on the decision-makers of the internal grievance system." *Id.* at 1131.

Further, as the *McCray* Court noted, "the regulation promulgated by [DOC] enabling the internal grievance system specifically permits inmates to pursue any remedies available to them in state or federal forums." *Id.* Specifically, Title 37, Chapter 93 of the Pennsylvania Code, which established the inmate grievance system, provides that "[i]nmates may also pursue available remedies in State and Federal court." 37 Pa.Code § 93.9(b). Thus, the very regulatory framework that governs the inmate grievance process expressly recognizes that the remedies sought therein are not exclusive to that process. It is this explicit preservation of access to the courts that perhaps rescues this Court's holding in *Bronson* from resting upon what otherwise may be questionable constitutional footing. In *Bronson*, this Court held that, where an inmate grievance did not assert the violation of a specific constitutional right, an appeal to a court of record from a denial of an inmate grievance would not lie in either the Commonwealth Court's original or appellate jurisdiction. *See Bronson*, 721 A.2d at 359. Although this holding facially appears to deny inmates access to the courts for all manner of non-constitutional claims that may or may not be resolved adequately through the grievance process—including, ostensibly, those premised upon the violation of a statutory right—the regulatory preservation of an inmate's ability to "pursue available remedies" in state or federal court, 37 Pa.Code § 93.9(b), ensures that some meaningful judicial review of such claims may be obtained.

Some route of access to a court of record is essential to the vindication of a meritorious legal claim. Any process that categorically would deny judicial review of such a claim is not constitutionally adequate. Internal prison grievance processes and the manner of their operation raise substantial concerns about the adequacy and fairness of adjudications taking place therein. Several intrinsic deficiencies define the

process, which have not gone unnoticed in the legal and academic community.[6] Some commentators have questioned the fundamental fairness of allowing a governmental entity to police its own actions and to serve as an arbiter in disputes concerning those actions, in which it always is an interested party. *See* Van Swearingen, Comment, *Imprisoning Rights: The Failure of Negotiated Governance in the Prison Inmate Grievance Process*, 96 CAL. L. REV. 1353, 1378 (2008) ("A dispute resolution process in which the State defines the rules of the process and then becomes both a party in the dispute and adjudicator violates basic notions of procedural fairness."). Absent any type of oversight from a neutral arbiter, which may provide unbiased consideration of potentially viable legal claims, may require the observance of fundamental procedural protections, and may fashion appropriate legal remedies, an internal dispute resolution process in which the same entity is both a litigant and the judge allows for the resolution of claims in a manner that elevates institutional priorities over the rights of a claimant. *Id.* at 1377-78 (arguing that grievance processes can "alter the focus of the complaint process from one concerned primarily with the declaration of rights and wrongdoings to one focused on a prison's organizational goal of resolving disputes quickly and to its own advantage," potentially failing "to deter particular forms of constitutionally unlawful conduct within the prison walls" while simultaneously providing "a sense of legal legitimacy that may limit court-imposed liability"). Senior Judge Arthur L. Alarcón of the United States Court of Appeals for the Ninth Circuit has called for reform of California's inmate grievance system upon similar grounds, suggesting the establishment of an independent ombudsman to determine "whether the administrative action under

---

[6] *See generally* David N. Wecht, "Breaking the Code of Deference: Judicial Review of Private Prisons," 96 YALE L.J. 815, 818-22 & accompanying notes (1987) (describing deferential judicial review of prison procedures and wide discretion of prison personnel).

investigation is unlawful, unreasonable, unjust, oppressive, improperly discriminatory, factually deficient, or otherwise wrong."  Arthur L. Alarcón, Essay, *A Prescription for California's Ailing Inmate Treatment System:  An Independent Corrections Ombudsman*, 58 HASTINGS L.J. 591, 598 (2007).

Given these considerations, given that Brown had no right to appeal from the denial of his grievance pursuant to *Bronson*, given that the right at issue arose under the statutory law of this Commonwealth and that "the General Assembly has not conferred the authority to consider matters of law on the decision-makers of the internal grievance system," *McCray*, 872 A.2d at 1131, and given that the regulations governing the inmate grievance process provide expressly for the pursuit of legal remedies in the courts of our Commonwealth, Brown is able to demonstrate that he had no alternative, adequate remedy available to him for purposes of mandamus.

For purposes of preliminary objections, I would hold:  that Brown has set forth a plausible claim for mandamus relief upon the grounds that DOC exercised its discretion in an arbitrary manner; that, absent a non-arbitrary explanation of the purported security risk, he had a right to possess the DEP records pursuant to the RTKL; and that he had no other adequate remedy by which to access them.  As such, we cannot say "with certainty that no recovery is possible."  *Bruno*, 106 A.3d at 56.  Thus, I would vacate the order of the Commonwealth Court, and I would remand for further proceedings.

Justice Donohue and Justice Dougherty join this dissenting statement.