556 A.2d 888

Charles GRALKA and Janet Gralka, his Wife, Appellees,

v.

Yvette ISAACSON, Trustee of the Greentree Road Shopping Center, Honeybaked Ham Co., a Corporation, Kenneth Isaacson, Managing Agent for the Trustee and as Part Owner of the Greentree Road Shopping Center, Anna M. Abromson, Anthony Papadakis, Kalmaine Graham, Pearl Fine Gross, Jeffrey Isaacson and Yvette Isaacson as Part Owners of the Greentree Road Shopping Center, Yvette Isaacson as Trustee of the Estate of Morris Deakter, Deceased, and as Managing Partner of the Greentree Road Shopping Center and the Greentree Road Shopping Center, a Partnership.

Appeal of Yvette ISAACSON, Trustee, Greentree Road Shopping Center, Kenneth Isaacson, Managing Agent for the Trustee and as Part Owner of the Greentree Road Shopping Center, Anna M. Abromson, Anthony Papadakis, Kalmaine Graham, Pearl Fine Gross, Jeffrey Isaacson and Yvette Isaacson as Trustee of the Estate of Morris Deakter, Deceased and as Managing Partner of the Greentree Road Shopping Center, Appellants.

Superior Court of Pennsylvania.

Argued Dec. 13, 1988.

Filed March 31, 1989.

Reargument Denied May 1, 1989.

Elaine V. Preston, Pittsburgh, for appellants.

Louis C. Long, Pittsburgh, for Gralka, appellees.

Before BROSKY, DEL SOLE and JOHNSON, JJ.

DEL SOLE, Judge:

This is an appeal from a preliminary injunction which directed the HoneyBaked Ham Company to cease and desist from selling any food item from the premises it leased from Appellant, landlord. This injunction was based upon the court's finding that HoneyBaked's lease violated the terms of the landlord's existing lease with Appellee. Because no reasonable grounds exist to support the court's conclusion that a restrictive covenant was violated, we reverse the trial court's order.

Where a preliminary injunction has been granted, our scope of review is limited to examining the record to determine whether there were any apparently reasonable grounds for the trial court's action. *City of Scranton v. Baiderman*, 74 Pa.Commw. Ct. 367, 460 A.2d 1199 (1983). The court's decision will be interfered with only where there are no grounds to support the decree or the rule of law relied upon was misapplied or palpably erroneous. *Willman v. Children's Hospital of Pittsburgh*, 505 Pa. 263, 479 A.2d 452 (1984). A preliminary injunction is properly issued only where there is urgent necessity to avoid injury which cannot be compensated for by damages. *Independent State Store Union v. Pennsylvania Liquor Control Bd.*, 495 Pa. 145, 432 A.2d 1375 (1981) It should never be awarded except where the plaintiff's rights are clear and unless greater injury will be done by refusing it than by granting it. *Id.*

In this case the injunction was issued based upon the court's conclusion that a restrictive covenant in the Appellee's lease was violated. Appellee had entered a lease with Appellant, landlord, to rent space in which to open a store, The Uncommon Market. Article IX of the lease provided a "Use Clause and Restrictions." It permitted the leased premises to be used "for the sale of any and all customary merchandise sold in other Tenant-operated stores." It also offered Appellee the following restriction as protection from competition:

Landlord will not lease or sell to, or otherwise permit the occupancy by, any one tenant (or its affiliates) of more

than Two hundred (200) square feet of floor area for the sale or display of *International Foods.* (emphasis added).

Other tenants enjoyed similar protections and a list of these tenants and their protected products was attached to the lease. A special agreement was made between Appellee and another Tenant, Pier I Imports, permitting the sale of certain items which would otherwise be violative of Appellee's restrictive covenant. These items were described in the agreement attached to the lease as "tins of *imported* cookies, candies, and/or other food items." (emphasis added).

The distinct nature of Appellee's business is described in one remaining section of the lease agreement. Section 24 indicates that Appellee will be offering to the public written and photographic material not printed in the United States of America. Due to the potential that certain members of the public may find this material to be offensive, a provision for the removal of this material was made. Included in this provision is the following statement: "Both Landlord and Tenant agree that the primary purpose of this lease is for a retail store purveying *foods from foreign lands.*" (emphasis added).

Subsequent to the execution of this lease landlord entered another lease agreement with HoneyBaked Ham. Honey-Baked sought to occupy a storeroom for the sale of its specially prepared spiral sliced hams. Customarily 95% of the sales generated from a HoneyBaked Ham store are from these hams which are raised and prepared domestically. The hams are supplied, cooked and smoked by a supplier in South Dakota, and the store tops the ham with a glaze and slices it in a spiral fashion.

Appellee filed a complaint in equity seeking to have HoneyBaked cease and desist from continuing its planned commercial operations at the shopping center. This relief was sought based upon Appellee's claim that by the terms of its lease it enjoyed an exclusive right to sell food products in the shopping center and that HoneyBaked would

violate the terms of this exclusivity provision if permitted to operate its store. In ruling on Appellee's request the court focused on the terms "international foods" which appear in the exclusivity provision of Appellee's lease. The court found that international foods are foods from any nation including the United States of America. Thus although the hams were supplied and produced domestically, the court found that they were an international food and the sale of such from the HoneyBaked store would violate the exclusive protection afforded Appellee in its lease.

■ Before we engage in a discussion of the interpretation of the term "international foods" which appear in the exclusivity clause, we first must address Appellee's claims that this appeal cannot proceed because it is interlocutory and because the matter is moot. Appellee first contends that appellate review in this case should await entry of a permanent injunction and the entry of damages. We cannot agree with Appellee's position when the Rules of Appellate Procedure specifically grant a party the *right* to take an interlocutory appeal from an order granting an injunction. *See:* Pa.R.A.P. 311(a)(4). And, despite the fact that HoneyBaked has decided not to pursue this matter on appeal, we do not find this appeal filed by the landlord to be moot. By the actions of the court granting an injunction the landlord has lost a tenant and the income it would generate, and may have suffered further damages. We cannot say HoneyBaked's nonparticipation in this appeal has resulted in the absence of a case or controversy. *Camiel v. Thornburgh*, 507 Pa. 337, 489 A.2d 1360 (1985).

■ Turning now to the central issue in this case; the court's interpretation of the term "international foods." As noted the lease granted Appellee's protection in the form of a restriction preventing the landlord from leasing premises in the shopping center to another business selling "international foods." Although the hams in this case were produced in this country the court found that their sale would violate the terms of this restrictive covenant.

It has been held that nothing will be deemed a violation of a restrictive covenant that is not in plain disregard of its

express words. *Berger v. Ackerman,* 293 Pa.Super. 457, 439 A.2d 200, 203 (1981). "Moreover, this court cannot enlarge a restriction by implication for the restriction must be construed most strictly against the one asserting rights under it." *Id.* When construing a restrictive covenant contained in a contract it must be recalled that the agreement must be interpreted as a whole with the ordinary meaning of language throughout the country given to the words of the contract. *Pines Plaza Bowling, Inc. v. Rossview,* 394 Pa. 124, 145 A.2d 672 (1958).

The term "international foods" was found to encompass food products which are produced in the United States. Appellee submits that this is an appropriate interpretation in view of the fact that international refers to all nations. We do not believe such an interpretation is reasonable or applicable to the provisions of this contract.

Reading the contract in its entirety we find that it permits Appellee to use their retail space for many purposes, but only one use is protected by the restrictive covenant, the sale of "international foods." The contract reveals that these food items are the primary product to be sold at Appellee's store and in Section 24 of the lease it is stated that the primary purpose of the lease is to offer for sale "food from foreign lands." These clauses read in conjunction which each other support a finding that the terms "international foods" refer to foods carried in Appellee's store which are from countries other than our own. Since the primary purpose of Appellee's business is to sell food from foreign lands, it would follow that it is this competition which Appellee would seek to have eliminated by means of a restrictive covenant. Further support for this interpretation can be found in the Rider to the lease which constitutes an agreement between Appellee and its fellow tenant Pier I. Therein it is stated that Pier I's sale of *imported* cookies, candies, and/or other food items would be within the exclusivity clause granted Appellee in its lease. The reference to imported items is further evidence of an intention to restrict other tenants from carrying products which are not produced in this country.

In addition, the interpretation offered by Appellee and made by the trial court is misguided. If the words "international foods" were to protect the competitors from offering for sale any food items from any country, the contract could have simply restricted the sale of "food." The inclusion of the word "international" would be unnecessary. We cannot accept the premise that the drafter of this contract provision, Appellee, included language with no purpose. A term in a contract should not be treated as mere surplusage. Instead, it appears plain that the parties intended to protect Appellee's store, which featured foreign food, from similar competition. By including the term "international foods" the landlord was restricted from entering into a lease with another tenant who would likewise offer for sale food items which came from other lands. The landlord's lease with HoneyBaked did not violate these terms. HoneyBaked offered for sale domestic hams, not foreign, imported and/or international items. Products which are produced in the United States of America are not protected by Appellee's restriction on "international foods."

Finding no support for the trial court's ruling, we reverse. Order reversed.