J-S03016-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| ARROWHEAD CONVEYOR CORPORATION AND BUSSE/SJI CORPORATION | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| Appellants | : | |
| v. | : | No. 309 WDA 2019 |
| GIUSEPPE'S FINER FOODS, INC., ICP GLOBAL HOLDINGS, INC., ICP ASSET MANAGEMENT, INC., AND DENNIS V. RAYBUCK | : | |

Appeal from the Judgment Entered February 1, 2019
In the Court of Common Pleas of Clearfield County Civil Division at
No(s):  No. 2006-2159-CD

| ARROWHEAD CONVEYOR CORPORATION AND BUSSE/SJI CORPORATION | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| GIUSEPPE'S FINER FOODS, INC., ICP GLOBAL HOLDINGS, INC., ICP ASSET MANAGEMENT, INC. AND DENNIS V. RAYBUCK | : | No. 351 WDA 2019 |
| Appellants | : | |

Appeal from the Judgment Entered February 1, 2019
In the Court of Common Pleas of Clearfield County Civil Division at
No(s):  2006-2159-CD

BEFORE:   McLAUGHLIN, J., McCAFFERY, J., and PELLEGRINI, J.[*]

_____

[*] Retired Senior Judge assigned to the Superior Court.

MEMORANDUM BY McCAFFERY, J.:                    FILED MARCH 24, 2020

Arrowhead Conveyer Corporation and its affiliate, Busse/SJI Corporation (Busse) (collectively, Arrowhead), plaintiffs below, appeal at 309 WDA 2019 from the judgment entered against their claim to pierce the corporate veil in the Clearfield County Court of Common Pleas, following the first portion of a bifurcated trial. Dennis V. Raybuck (Raybuck), Giuseppe's Finer Foods, Inc. (Giuseppe's), ICP Global Holdings, Inc., and ICP Asset Management, Inc. (collectively, the Raybuck Entities or Raybuck), the defendants below, cross-appeal at 351 WDA 2019 from the judgment entered against them, following a jury trial, in this breach of contract action. We affirm.

Arrowhead and Busse are Wisconsin corporations that design, manufacture, and supply container and material handling equipment. Mr. Raybuck was the president of the now-defunct Giuseppe's, as well as the remaining two Raybuck Entities. At all relevant times, the Raybuck Entities were closely-held corporations owned by Raybuck and members of his family, and controlled by Raybuck. The Raybuck Entities engaged in the food importation industry. Giuseppe's was formed to manufacture food products using products imported by the other entities. In pursuit of this business, the Raybuck Entities issued multiple purchase orders totaling approximately $24 million.

In October of 2004, the Raybuck Entities issued an invitation for bids for the provision of equipment for the Giuseppe's facility. On December 29, 2004,

Arrowhead submitted a proposal to furnish a bulk glass depalletizer, a spray cooler, a pouch cooler for a base price of $754,900, and additional options for $228,400. The proposal contained a section entitled "Terms and Conditions of Equipment Sale," which stated, in toto:

2. Acceptance: [Giuseppe's] acceptance of this proposal is limited to the terms and conditions contained herein and excludes any different or additional conditions contained in [Giuseppe's] acceptance. If, for [Giuseppe's] convenience, [Giuseppe's] regular purchase order forms are used in accepting this proposal or in ordering equipment covered by this proposal, Arrowhead Conveyor's acceptance is expressly conditioned upon [Giuseppe's] assent to any additional or different terms and conditions contained herein. Any contract made by and between the parties is expressly conditioned upon Arrowhead Conveyor's review and approval of [Giuseppe's] credit.

A. Equipment Purchase Terms of Payment: The purchase prices shall be payable in United States current funds as per the terms expressed in this proposal (to be determined by Arrowhead Conveyor and communicated to [Giuseppe's] in writing).

B. Parts & Service and equipment orders less than $15,000 value Terms of Payment: The purchase price shall be payable in United States current funds as follows:

100% due upon shipment or completion of services

Amounts due upon shipment shall be due when equipment is ready for shipment if [Giuseppe's] notifies Arrowhead Conveyor that [Giuseppe's] is not ready to receive the shipment. Such delayed shipment is subject to storage and handling charges and is payable upon presentation of invoice. If Arrowhead Conveyor is responsible for installation and [Giuseppe's] delays or interrupts installation, the full balance of the purchase price less cost of completion of installation shall immediately become due. If installation is resumed, [Giuseppe's] shall reimburse Arrowhead Conveyor for any increased costs resulting from such delays. In the event [Giuseppe's] does not satisfy the terms of payment

> outlined herein, Arrowhead Conveyor reserves the right to assess a service charge of 1½% per month on the amount due on a pro-rata basis for any partial month on the amount due in arrears, provided there is no conflict with local or state law.

Arrowhead's Amended Complaint, 8/7/08, Exh. D, at 24 (incorporated by reference, Second Amended Complaint of 3/23/09).

On January 5, 2005, Giuseppe's accepted Arrowhead's proposal and issued a purchase order. The purchase order, for $831,000, confirmed that it was issued per Arrowhead's proposal dated December 29, 2004. Through a change order executed by Giuseppe's in May of 2005, the total contract price was increased to $879,600. Arrowhead's affiliate, Busse, separately entered into an oral agreement with Giuseppe's to perform field service work on the equipment.

Giuseppe's began to experience funding shortfalls affecting its ability to pay vendors. Raybuck's bank facilitated a financial restructuring plan pursuant to which the bank agreed to make a loan conditioned upon creditors agreeing to a payment plan. Under the plan, which would supersede any contractual terms to the contrary, creditors would receive an immediate payment of 75% of the balance owed them. The final 25% would be secured with a two-year promissory note at annual interest of 6%. The bank's plan was designed to keep vendors engaged with Giuseppe's while it regained its financial footing.

As part of this negotiation with the bank, Raybuck executed a certificate on December 21, 2006. The certificate compiled a list of all vendors owed in excess of $100,000 and was created as part of the debt restructuring. The certificate created by Raybuck delineated two classifications of vendors – those with whom no dispute existed as to amount owed, and those with whom amounts owed were disputed. Arrowhead and Busse were included in the undisputed list, where vendors' claims were acknowledged as valid. Next to the amounts owed to Arrowhead and Busse, Raybuck wrote "no dispute but no agreement signed." In this context, it appears that "no agreement signed" indicates that Arrowhead and Busse had not agreed to the bank's proposed payment and restructuring terms. Arrowhead, however, rejected the proposed plan and elected instead to proceed under the terms of its agreement with Giuseppe's.

When Giuseppe's failed to make payment in response to Arrowhead's invoices, Arrowhead commenced this action against the Raybuck Entities by complaint on December 29, 2006, raising two counts of breach of contract and one count for piercing the corporate veil. The complaint also sought interest, fees, and costs under the Contractor and Subcontractor Payment Act[1] (CASPA). The Raybuck Entities raised counterclaims of breach of contract (one each for Arrowhead's contract and Busse's oral agreement), breach of

---

[1] 73 P.S. §§ 501-516.

express warranty, breach of implied warranty of merchantability, and breach of implied warranty of fitness for a particular purpose. Raybuck Entities' Answer, New Matter, & Counterclaims to Second Amended Complaint, 8/20/19. We note that ultimately, Giuseppe's ceased business and is now defunct.

The Honorable Stewart Kurtz, Senior Judge of Huntingdon County, held a bifurcated bench trial on Arrowhead's veil-piercing claim on March 2 to 4, 2016. On June 7, 2017, he entered an order dismissing that claim and a memorandum explaining his ruling. [2]

_____

[2] Initially, this Court noted a lack of clarity as to whether Arrowhead filed post-trial motions following the timely entry of the verdict. On March 12, 2019, this Court issued a rule to show cause directing Arrowhead, appellant in 309 WDA 2019, to show cause why the appeal should not be dismissed. On March 14, this Court received Arrowhead's letter explaining that lead counsel was on vacation when the order of judgment from the trial court was received. Counsel further explained he prepared a motion for post-trial relief remotely during his vacation, and emailed the motion to the trial court on June 15, 2017, within eight days of the trial court's order filed on June 7, 2017. Counsel also instructed his office to send the motion via UPS next day delivery to the Court of Common Pleas of Clearfield County. The motion was delivered on June 16, 2017. The Court of Common Pleas' Prothonotary notified counsel's office it was dissatisfied with the electronic signature and requested a physically signed motion. Another attorney from counsel's law office entered her appearance and prepared a physically signed version of the motion, which was sent overnight and received by the Court of Common Pleas on Monday, June 19, 2017. On March 26, 2019, this Court entered an order discharging the rule to show cause.

Under Pa.R.Civ.P. 227.1(c), post-trial motions must be filed within ten days. In this case, the tenth day was Saturday, June 17, 2017. Unquestionably, the electronically-signed motion, delivered on Friday, June 16th, met this deadline. Per Pa.R.Civ.P 106, periods of time in rules shall be so computed as to exclude the first and include the last day of such period, and whenever the last day of such period falls on a Saturday, Sunday, or legal

On May 1, 2018, over eleven years after the commencement of this suit, the Honorable David Grine, Senior Judge of Centre County, presided over a jury trial on Arrowhead's breach of contract claims and the Raybuck Entities' counterclaims. Pertinently, he granted Arrowhead's motion to exclude certain evidence the Raybuck Entities sought to offer as to alleged defects with the equipment and services supplied by Arrowhead. On May 2, the jury returned a verdict in favor of Arrowhead. On September 11, 2018, the court entered an order applying CASPA and awarding a total amount of $844,686.98 to Arrowhead on all counts.[3] On February 1, 2019, the court denied Raybuck's motion for post-trial relief and ordered that judgment be entered in favor of Arrowhead on the breach claims and all of Raybuck's counterclaims, and in favor of Raybuck as to piercing the corporate veil.

Arrowhead filed a timely notice of appeal on February 25, 2019, and Raybuck filed one on March 1st. On March 26th, this Court consolidated the appeals. The trial court ordered statements per Pa.R.A.P. 1925(b), and both parties timely filed such statements. On June 19 and July 17 of 2019, each trial judge filed a letter advising the Prothonotary he would submit no further opinion.

---

holiday, such day shall be omitted from the computation. Thus, the physically-signed motion, received by the court on Monday, June 19th, also met the deadline imposed by Rule 227.1.

[3] The CASPA ruling affected the rate of interest to be applied to the judgment for breach.

We first consider Raybuck's cross-appeal. Raybuck presents five issues for our review (reordered for ease of discussion):

Whether the trial court erred in precluding [Raybuck] from offering evidence of substantial defects in the equipment and services provided by [Arrowhead] as a counterclaim, as a defense, and in determining whether [Arrowhead] established a prima facie case of [its] proper performance of the contracts and satisfaction of all conditions precedent to [Raybuck's] payment obligations.

Whether the trial court erred in refusing to issue a curative instruction after counsel for [Arrowhead] made a highly prejudicial and improper statement, telling the jury that [Raybuck] never made any complaints, despite knowing that [Raybuck] repeatedly complained and would have offered evidence of such complaints and the substantial defects in the equipment but for the trial court's preclusion of such evidence.

Whether the trial court erred in permitting [Busse] to change its claim from an oral contract claim to written contract claim when the cause of action pled in Count II of the Second Amended Complaint expressly alleged an oral contract between [Giuseppe's] and [Busse], and when the email that allegedly formed the basis of a written contract was not attached to the Second Amended Complaint.

Whether the trial court erred in issuing its Finding of Fact No. 2, finding that Section 2.B of the written contract between [Giuseppe's] and [Arrowhead] was applicable when the plain language of Section 2.B states that Section 2.B is only applicable to "Parts & Services and equipment order less than $15,000 value" and when it is undisputed that the order in question substantially exceeded $15,000 in value.

Whether the trial court erred in determining that [CASPA] was applicable to [Arrowhead] when it did not qualify as a "Contractor" under the Act because it was not contracted to improve real property, it was only contracted to supply and not install equipment.

Raybuck's Brief at xi-xiii.

## Arrowhead's Motion in Limine

First, Raybuck argues the trial court erred in granting Arrowhead's motion in limine and precluding proffered evidence of alleged defects in equipment and services Arrowhead provided, which Raybuck offered as a counterclaim and a defense. Raybuck claims as follows:

> This Court should reverse and remand for a new trial as to Phase II only because the trial court erred in refusing to allow [Raybuck] to present evidence that the [e]quipment (the depalletizer, spray cooler and TUCS pouch cooler provided by Arrowhead) was defective and that the services provided by [Busse] were defective.

Raybuck Entities' Brief at 43-44 (footnote omitted).

"The question of whether evidence is admissible is a determination that rests within the sound discretion of the trial court and will not be reversed on appeal absent a showing that the court clearly abused its discretion." Moroney v. General Motors Corp., 850 A.2d 629, 632 (Pa. Super. 2004). "Discretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will." Schmalz v. Manufacturers & Traders Tr. Co., 67 A.3d 800, 803 (Pa. Super. 2013), quoting Catlin v. Hamburg, 56 A.3d 914, 922 (Pa. Super. 2012).

Preliminarily, we note that while the trial record indicates that oral argument was scheduled on Arrowhead's motion in limine, and that the trial court granted this motion, we have found no indication of the court's reasoning

for its ruling. Nevertheless, we note Arrowhead's motion in limine cited Raybuck's certification to the bank, signed and executed by Mr. Raybuck as president of Giuseppe's, as proof that it did not dispute that Arrowhead was properly owed the amounts still outstanding under their agreement. The motion also sought to exclude evidence of problems with the production line due to programming errors or deficiencies caused by parties other than Arrowhead. The reasoning of Arrowhead's motion, on its own, was sufficient to demonstrate that the trial court's ruling was not an abuse of discretion. If Raybuck had already acknowledged that the remaining balance was properly owed, the trial court could preclude evidence claiming, belatedly, that Arrowhead had not satisfied conditions precedent to Raybuck's obligation to pay. Furthermore, the trial court could exclude evidence as to programming errors made by parties other than Arrowhead and Busse, because it was not appropriate to fault Arrowhead and Busse for the errors of others, especially independent third parties who were not party to the contract. Such evidence seems to be more prejudicial than probative. See Pa.R.E. 403 (evidence is excludable "if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence"). Because Raybuck could not establish the trial court's decision was clearly erroneous, this claim fails.

## Denial of a Curative Instruction

In its second issue, Raybuck argues that the trial court erred in declining to issue a curative instruction after Arrowhead's counsel made a statement in closing argument to which Raybuck objected. We note Arrowhead's attorney said, "You didn't hear any evidence that there was any complaints [as to the depalletizer.] After it was installed, did [Giuseppe's] come back and say these items that we noted earlier at the factory acceptance test weren't done? There were no complaints that came back that said anything wasn't corrected." N.T. Trial, 5/1/18, at 161-62. Raybuck's counsel objected, and the objection was sustained. Id. Raybuck's counsel then requested that the jury be instructed not to make any inferences about the absence of complaints. After hearing argument, the trial court refused to give such an instruction. Id. at 166-67. In its opinion and order of September 11, 2018, denying post-trial motions, the trial court described the comment as de minimis and as therefore not warranting a separate curative instruction. Trial Ct. Op., 9/11/18, at 2.

"It is well settled that in reviewing a challenge to a jury instruction the charge, as a whole, must be considered. Furthermore, the trial court has broad discretion in phrasing the instructions, so long as the directions given 'clearly, adequately, and accurately' reflect the law." Grove v. Port Auth. of Allegheny Cty., 218 A.3d 877, 887 (Pa. 2019) (citation omitted). "[A] reviewing court will not grant a new trial on the ground of inadequacy of the charge unless there is a prejudicial omission of something basic or

fundamental." Id. at 888, quoting Stewart v. Motts, 654 A.2d 535, 540 (Pa. 1995). Absent prejudice, a reviewing court will not disturb a jury verdict based on a supposed error in the charge; a harmless error is not sufficient to warrant a new trial. Id.

Here, Raybuck attempts to extrapolate from its first argument, concerning the excluded evidence, into this claim regarding Arrowhead's counsel's closing argument. Raybuck claims the comment was doubly unfair because the harm of the comment was compounded by the evidentiary ruling excluding Raybuck's alleged complaints about Arrowhead's equipment. However, it is clear from the context that counsel's comment was limited in scope, and was further cut short because of Raybuck's timely objection, which was sustained. Arrowhead's counsel was speaking of a finite period of time, and of a single machine. It is reasonable that the trial court would not want to call further attention to such a minor transgression.

Furthermore, Arrowhead's comments appear to have been in response to comments made during Raybuck's closing argument, wherein his counsel argued to the jury that there was not sufficient evidence that Arrowhead met all its performance requirements. N.T. Trial, 5/1/18, at 156. Although Raybuck's objection was sustained, the comment about the lack of complaints was in response to this line of argument.

In addition, the court properly instructed the jury that the attorneys' arguments are not evidence. N.T. Trial, 5/1/18, at 170. At the beginning of

- 12 -

trial, the court instructed jurors that they were to disregard the subject of lawyers' objections if the court sustained the objection. N.T. 4/30/18, at 25-26. This Court cannot conclude that, when taken as a whole, the jury instructions were inaccurate or inadequate.

Although Raybuck cites cases, on appeal, on comments that inflame passion or prejudice, applying these cases to a description of a depalletizer and factory installation and review can only cast into stark contrast the relative mildness of the commentary at issue here. Raybuck cites: Narciso v. Mauch Chunk Twp., 87 A.2d 233 (Pa. 1952), in which counsel argued that the action was "really" against the taxpayers and not the municipality; Mirabel v. Morales, 57 A.3d 144 (Pa. Super. 2012), in which trial counsel used closing arguments to inject the issue of racism into a case arising from a car accident; Poust v. Hylton, 940 A.2d 380 (Pa. Super. 2007), in which counsel, having been expressly forbidden from making mention of cocaine, nevertheless stated that the decedent in a wrongful death action had a cocaine metabolite in his system when he died; and Young v. Washington Hosp., 761 A.2d 559 (Pa. Super. 2000), in which counsel claimed that parents of an injured infant were seeking only to profit from her injuries. Here, Arrowhead's counsel's comment, limited in scope to a single piece of equipment, and limited temporally, pertained to something that, while having great import to the parties, had no inherent inflammatory qualities. Because Raybuck has not

established that the comment was especially inflammatory or that Raybuck was prejudiced thereby, this claim fails.

Breach of Contract

In its third issue, Raybuck argues that the trial court erred in permitting Arrowhead to change its claim as to Busse, its subsidiary, from an oral contract claim to a written contract claim. Arrowhead pled in its complaint and argued at trial that Busse and Raybuck had an oral agreement. At trial Arrowhead submitted evidence of an email message from one of Raybuck's employees referring to that oral agreement. Raybuck now argues that Arrowhead pled pretrial that Busse had an oral agreement with Raybuck, but that Arrowhead then switched at the eleventh hour to a different breach theory, relying on the email. Raybuck argues that in doing so, Arrowhead failed to give adequate notice in its pleadings and to comply with pleading requirements. See Pa.R.Civ.P. 1019(h) ("When any claim or defense is based upon an agreement, the pleading shall state specifically if the agreement is oral or written."). When the agreement is written, it must be attached to the pleading. Pa.R.Civ.P. 1019(i).

Arrowhead, in turn, notes that Pennsylvania courts have admitted emails as circumstantial evidence of the terms of an oral contract. See, e.g., F. Zacherl, Inc. v. Flaherty Mech. Contractors, LLC, 131 A.3d 1030, 1038

(Pa. Cmwlth. 2016).[4]  Arrowhead asserts that its position has always been that the contract at issue was oral, and thus that Raybuck is mischaracterizing its position.  Arrowhead's Response Brief, at 29-32.

The evidence adduced at trial includes an email discussion relating to an oral agreement that Busse would perform certain on-site work.  N.T. 4/30/18, at 164-67.  In an email message, a Raybuck employee requested a technical service visit from Busse, offered that Raybuck would pay travel and expenses, and stated that costs incurred would be added to a purchase order (although it appears the purchase order was never so modified).  Id. at 164-65.

What Raybuck characterizes as Arrowhead's vacillation between two different theories of contract formation appears instead to be introduction of circumstantial evidence to corroborate the existence of an oral agreement via email.  An email message can contain a contract or it can refer to a contract.  If an email message refers to a written contract, it does not necessarily render it part of the contract.  Instead it is evidence related to it.  The same is true here, though the contract was oral.  The email message, produced by Raybuck years before trial, is evidence tending to establish the existence of an oral agreement.

Although Raybuck frames its position as inadequate notice (per its invocation of Rule 1019's pleading requirements), its argument goes instead

---

[4] "Although a decision of the Commonwealth Court is not binding upon this Court, it can be considered as persuasive authority."  Nw. Sav. Bank v. Knapp, 149 A.3d 95, 98 n.3 (Pa. Super. 2016) (citation omitted).

to sufficiency of the evidence. Raybuck argues explicitly that there was insufficient evidence to prove that an oral agreement had been reached. Raybuck's Brief at 61.

Our Supreme Court has explained:

When reviewing a sufficiency of the evidence claim in a civil case . . . an appellate court, viewing all the evidence and reasonable inferences therefrom in the light most favorable to the verdict winner, must determine whether the evidence was sufficient to enable the factfinder to find that all the elements of the causes of action were established by a preponderance of the evidence. Whether a claim was established under a preponderance of the evidence standard is "tantamount to a 'more likely than not' inquiry."

Samuel-Bassett v. Kia Motors Am., Inc., 34 A.3d 1, 34-35 (Pa. 2011) (citations omitted).

In its order and opinion of September 11, 2018, the trial court notes its review of the record and concludes that the jury had ample evidence to find the necessary elements for Arrowhead's claims of breach. Order & Opinion, 9/11/18, at 3. The record confirms that the emails, coupled with relevant testimony, establishes the existence of an oral agreement for additional technical support supplemental to Arrowhead's contract. The emails, produced by Raybuck, cannot form the basis for unfair surprise. Thus, whether posed as a sufficiency argument or a notice argument, this claim fails.

Raybuck also claims the trial court erred in finding that Section 2.B of the contract between Giuseppe's and Arrowhead was applicable because it

specified that it applied to "Parts & Service and equipment order less than $15,000 value."[5]  For ease of discussion, we reproduce that section:

> B.  Parts & Service and equipment orders less than $15,000 value Terms of Payment:  The purchase price shall be payable in United States current funds as follows:
>
> 100% due upon shipment or completion of services
>
> Amounts due upon shipment shall be due when equipment is ready for shipment if [Giuseppe's] notifies Arrowhead Conveyor that [Giuseppe's] is not ready to receive the shipment.  Such delayed shipment is subject to storage and handling charges and is payable upon presentation of invoice.  If Arrowhead Conveyor is responsible for installation and [Giuseppe's] delays or interrupts installation, the full balance of the purchase price less cost of completion of installation shall immediately become due.  If installation is resumed, [Giuseppe's] shall reimburse Arrowhead Conveyor for any increased costs resulting from such delays.  In the event [Giuseppe's] does not satisfy the terms of payment outlined herein, Arrowhead Conveyor reserves the right to assess a service charge of 1½% per month on the amount due on a pro-rata basis for any partial month on the amount due in arrears, provided there is no conflict with local or state law.

Arrowhead's Amended Complaint, 8/7/08, Exh. D, at 24 (incorporated by reference, Second Amended Complaint of 3/23/09).

Raybuck's argument contests the award of 1.5% interest per month for overdue amounts owed under the contract, and relies on a typographical indentation of the section carrying the disputed language as to interest on late payments.  Raybuck argues the indentation shows that the terms apply only to a subsection on smaller purchases, and not all purchases.  We disagree.

---

[5] This section of the contract is quoted at length on pages 3 and 4, supra.

"[T]he interpretation of the terms of a contract is a question of law for which our standard of review is de novo, and our scope of review is plenary." McMullen v. Kutz, 985 A.2d 769, 773 (Pa. 2009) (citation omitted). When a contract is susceptible to two competing constructions, the one "which makes it fair, customary and such as prudent [persons] would naturally execute" is preferred. Felmont Oil Corp. v. Cavanaugh, 446 A.2d 1280, 1283 (Pa. Super. 1982) (citations & quotation marks omitted).

Raybuck's support lies solely in its interpretation of what it characterizes as industry custom; there is no authority in Raybuck's brief supporting its interpretation of the contract. Raybuck's argument is, essentially, that for larger orders, custom dictates a bespoke payment term rather than a boilerplate term. However, Raybuck's resort to this argument is a blade that cuts both ways – an adversary could just as easily argue that, because of the large sums involved in more significant purchases, it is more important to rely on standard terms for interest on tardy payments, as the impact of such tardiness is greater.

Raybuck's argument would render the indented subsection in question mere surplusage, and would leave the contract silent as to late payment. "A term in a contract should not be treated as mere surplusage." Gralka v. Isaacson, 556 A.2d 888, 891 (Pa. Super. 1989). Further, Raybuck's proposed interpretation, in which the term on interest for payments in arrears is tucked into the subsection on orders of less than $15,000 of value, would

- 18 -

render that subsection internally inconsistent. For such lower-cost orders, payment is due in its entirety upon shipment or completion of services. The disputed section, however, explicitly refers to amounts due upon shipment, and refers to other terms including amounts due in arrears, as opposed to amounts already paid, which would not apply to the lower-value scenario in which there is one invoice, one payment due date, and no further complications. This is neither a reasonable reading of the contract nor of the laws of contract interpretation. Contracts must be given a reasonable interpretation reflecting the intention of the parties. CBS Inc. v. Capital Cities Commc'ns, Inc., 448 A.2d 48, 54 (Pa. Super. 1982). There being no error in the application of the trial court of the operative contract term, this argument fails.

## CASPA

In its final issue, Raybuck avers the trial court erred in applying CASPA to the judgment for Arrowhead. Raybuck argues that Arrowhead and Busse are not contractors or subcontractors as defined by CASPA, that the underlying agreements are not construction contracts as defined by the Act, and that Arrowhead and Busse did not "improve" real property as defined by the Act.[6] Raybuck raised its opposition to application of CASPA in a summary judgment

---

[6] In its brief, Raybuck also argues that an ownership exclusion applies; this argument does not appear in Raybuck's Rule 1925(b) statement of matters complained of on appeal and is therefore waived. See Pa.R.A.P. 1925(b)(4)(viii).

motion which was denied on November 10, 2014. Arrowhead responds on appeal that it set forth competent evidence that the start-up and additional technical services attendant to installation of Arrowhead's equipment at Raybuck's facility satisfied CASPA's requirements.

This Court has stated:

> CASPA [is] a comprehensive statute enacted in 1994 to cure abuses within the building industry involving payments due from owners to contractors, contractors to subcontractors, and subcontractors to other subcontractors. The underlying purpose of [CASPA] is to protect contractors and subcontractors . . . [and] to encourage fair dealing among parties to a construction contract. The statute provides rules and deadlines to ensure prompt payments, to discourage unreasonable withholding of payments, and to address the matter of progress payments and retainages. Under circumstances prescribed in the statute, interest, penalty, attorney fees and litigation expenses may be imposed on an owner, contractor or subcontractor who fails to make payment to a contractor or subcontractor in compliance with the statute.

Zimmerman v. Harrisburg Fudd I, L.P., 984 A.2d 497, 500–01 (Pa. Super. 2009) (citations, footnotes, & quotations omitted); see also Prieto Corp. v. Gambone Const. Co., 100 A.3d 602, 607 (Pa. Super. 2014). CASPA is a remedial statute, and courts must accord it a liberal construction to effect its objects and promote justice. Lomas v. Kravitz, 130 A.3d 107, 131 (Pa. Super. 2015).

"Because statutory interpretation is a question of law, our standard of review is de novo, and our scope of review is plenary." Snead v. Soc'y for Prevention of Cruelty to Animals of Pa., 985 A.2d 909, 912 (Pa. 2009).

> The object of interpretation and construction of all statutes is to ascertain and effectuate the intention of the General Assembly.

> See 1 Pa.C.S. § 1921(a) . . . . When the words of a statute are clear and free from all ambiguity, their plain language is generally the best indication of legislative intent. A reviewing court should resort to other considerations to determine legislative intent only when the words of the statute are not explicit. 1 Pa.C.S. § 1921(b) . . . In ascertaining legislative intent, this Court is guided by, among other things, the primary purpose of the statute, see 1 Pa.C.S. § 1921(c)(4), and the consequences of a particular interpretation. Id. § 1921(c)(6).

In re Carroll, 896 A.2d 566, 573 (Pa. 2006) (some citations omitted). "[I]t is axiomatic that in determining legislative intent, all sections of a statute must be read together and in conjunction with each other, and construed with reference to the entire statute." Penn Jersey Advance, Inc. v. Grim, 962 A.2d 632, 634 (Pa. 2009). "All other provisions of a statute shall be liberally construed to effect their objects and to promote justice." 1 Pa.C.S. § 1928(c).

Under CASPA, a "contractor" is "[a] person authorized or engaged by an owner to improve real property." 73 P.S. § 502 ("Definitions"). A "construction contract" is an agreement to perform work on any real property located in Pennsylvania. Id. To "improve" is "[t]o design, effect, alter, provide professional or skilled services, repair or demolish any improvement upon, connected with, or on or beneath the surface of any real property . . . to furnish materials, . . . or to perform any labor upon improvements." Id.

Arrowhead argues it submitted evidence sufficient to support the trial court's determination that it provided startup support and additional technical services on the equipment installed on the factory floor at Giuseppe's. The plain language of CASPA, where any analysis of statutory application must

begin, broadly outlines the relevant terms. CASPA defines "improve" using inclusive language, like "any", and catalogs a broad variety of actions in defining improvement. That language includes "any labor upon improvements." 73 P.S. § 502.

Raybuck cites Reco Equip. v. John T. Subrick Contracting, 780 A.2d 684 (Pa. Super. 2001), a case involving equipment rental. This case, about the temporary furnishing of equipment, is not relevant and is distinguishable from a case arising from a contract for permanent, fundamental improvements to a manufacturing facility. The equipment that Arrowhead provided was part of what made the facility a factory and not a warehouse or other type of building. Raybuck also cites Apostolou Assocs., Inc. v. DiPardo, 2011 Pa. Dist. & Cnty. Dec. LEXIS 76 (March 31, 2011), a Court of Common Pleas case involving an agreement to explore the feasibility of a development project, entered into before either party even owned the subject property, for assistance with dealings with local planning and zoning officials. That opinion is not binding on this Court; neither is it persuasive in this instance, given that the facts are inapposite. See Branham v. Rohm & Haas Co., 19 A.3d 1094, 1103 (Pa. Super. 2011) ("[C]ommon pleas court decisions are not binding on appellate courts.").

Arrowhead established both that it provided some level of customization to the equipment and that it provided startup services on site. This is sufficient to invoke CASPA's protections. Even if the work provided was ancillary to the

- 22 -

sale of equipment, the broad language of CASPA covers the work provided and therefore its protections apply. Arrowhead was there, on site, to provide labor upon improvements to real property. It submitted sufficient competent evidence to establish that it did so. This argument fails.

Piercing the Corporate Veil

Arrowhead raises a sole issue on appeal: whether the trial court erred in denying its claim to pierce the corporate veil:

> Whether justice and equity require piercing the corporate veil and holding [Mr.] Raybuck personally liable for Giuseppes' debt to [Arrowhead] where Giuseppes was grossly undercapitalized and rendered judgment proof as a result of Raybuck's failure to contribute money from either ICP Global or his personal money so that Giuseppes had the ability to fully pay the equipment vendors involved in supplying equipment for the start up of Giuseppes' food processing operations.

Arrowhead's Brief at 3.

Arrowhead argues that Raybuck himself exercised exclusive control over all the corporate entities involved in the deal and was aware that the bank's financing was not sufficient to satisfy the debts incurred to equipment vendors. It argues that Giuseppe's was grossly undercapitalized for purposes of paying vendors, and Raybuck did nothing to remedy the situation. It argues that justice and equity support piercing the corporate veil.

The trial court noted the strong presumption against veil-piercing in Pennsylvania law and found that the factors governing piercing the veil were not established by Arrowhead. Trial Ct. Op., 6/2/17, at 29.

This Court has stated:

> Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of a jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law. However, [where] the issue . . . concerns a question of law, our review is plenary.

Stephan v. Waldron Electric Heating & Cooling LLC, 100 A.3d 660, 664–665 (Pa. Super. 2014) (citation omitted).

The "legal fiction of a separate corporate entity was designed to serve convenience and justice, and will be disregarded whenever justice or public policy demand and when the rights of innocent parties are not prejudiced nor the theory of corporate entity rendered useless." Ashley v. Ashley, 393 A.2d 637, 641 (Pa. 1978) (citations omitted). "[T]here is a strong presumption in Pennsylvania against piercing the corporate veil." Lumax Industries, Inc. v. Aultman, 669 A.2d 893, 895 (Pa. 1995). Establishing that all stock in a corporation is owned by one person is not sufficient to pierce the corporate veil in Pennsylvania. Kaites v. Pa. Dep't. Enviro. Resources, 529 A.2d 1148 (Pa. Cmwlth. 1987) (rejecting application of alter ego liability theory).

Our courts consider the following factors when determining whether to pierce the corporate veil: (1) undercapitalization; (2) failure to adhere to corporate formalities; (3) substantial intermingling of corporate and personal

affairs, and (4) use of the corporate form to perpetrate a fraud. Lumax Industries, 669 A.2d at 895. This Court has relied on the elements of common law fraud in applying the Lumax Industries factors. See, e.g., Fletcher-Harlee Corp. v. Szymanski, 936 A.2d 87, 111-01 (Pa. Super. 2007).

Undercapitalization, substantial intermingling, failure to adhere to corporate formalities, and fraud: these are the guideposts of our inquiry. The record suggests some intermingling between Raybuck's various corporations. For instance, ICP Global Payroll, LLC acted as paymaster for all employees, regardless of which subsidiary employed them. Trial Ct. Op., 6/2/17, at 14. Raybuck was president of, and managed daily operations for, all of the corporate entities at issue here. Id. The strongest evidence concerned undercapitalization, and there Arrowhead has made a substantial showing.

Evidence of the other Lumax Industries factors is weak or altogether lacking. The evidence as to intermingling between corporate forms does not necessarily establish intermingling of corporate and personal affairs. It is not fraudulent for investors to take reasonable, legal steps to wind down a failing business venture. Although there is some evidence that Raybuck used its various corporate structures to move assets in a way that would make them less available to creditors by, for instance, transferring ownership of valuable equipment from Giuseppe's to ICP Asset and then leasing the equipment back to Giuseppe's, Arrowhead has not proven sufficient facts for this Court to

conclude that veil-piercing is justified. Where actions could be seen as reasonable winding-down of a faltering investment, we will not view them harshly and call it fraud without ample evidence.

Although Arrowhead established evidence of undercapitalization, it did not establish any of the other Lumax Industries factors to the extent necessary to set aside the factual findings below. Given the presumption against veil-piercing, we affirm the judgment entered against Arrowhead on this claim.

February 1, 2019 judgment against Arrowhead on its piercing-the-corporate-veil claim affirmed. February 1, 2019 judgment on the parties' remaining claims and counter-claims affirmed.

Judge Pellegrini joins this memorandum.

Judge McLaughlin concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/24/2020